In re the MARRIAGE OF Tondeleyo
L. DALE, Appellant,

and

Christopher T. Major, Appellee.

No. 02CA1523.

Colorado Court of Appeals,
Div. I.

Nov. 20, 2003.

As Modified Feb. 5, 2004.

Rehearing Denied Feb. 5, 2004.

Maguire & Rabun, LLC, Bruce H. Rabun, Greenwood Village, Colorado, for Appellant.

Stevens, Littman, Biddison, Tharp & Weinberg, LLC, Craig Weinberg, Boulder, Colorado, for Appellee.

Opinion by Judge LOEB.

In this dissolution of marriage proceeding, Tondeleyo L. Dale (wife) appeals from the division of property set forth in the trial court's permanent orders. We affirm.

Wife married Christopher T. Major (husband) in 1997, and the decree dissolving their marriage was entered by the trial court in March 2002. The marriage was the second for both, no children were born to the parties, and both parties waived maintenance. Therefore, only property division issues are raised in this appeal.

In reviewing a trial court's division of property, we recognize that the trial court has great latitude to effect an equitable distribution based on the facts and circumstances of each case. Thus, on review, an appellate court must not disturb a trial court's decision regarding division of property unless there has been a clear abuse of discretion. *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo.2001).

## I.

Wife asserts that the trial court exceeded its authority by addressing her interests in various family trusts because, under § 14–10–113(7)(b), C.R.S.2003, those interests could not be considered either as property or an economic circumstance for purposes of the property division. We conclude that the trial court properly addressed wife's vested interest in her grandfather's irrevocable trust, and we need not consider her interest in her parents' revocable trusts.

## A.

Remainder interests in irrevocable trusts have been deemed property for purposes of the disposition of property in a dissolution action. Such interests may present only a right to future enjoyment and are subject to complete divestment or defeasance, but they are certain, fixed interests subject only to the condition of survivorship and may not be withheld by the trustee in his or her discretion. Thus, they are distinct from interests in a discretionary or revocable trust, which are viewed as mere expectancies. *In re Marriage of Balanson, supra*, 25 P.3d at 41.

A division of this court in *In re Marriage of Gorman*, 36 P.3d 211 (Colo.App.2001), also determined that a remainder interest in a revocable trust constituted property. The division reasoned that such an interest is vested subject to a condition subsequent. Common conditions triggering divestment include the death of the remainderman during the life of the present beneficiary, the exercise of a power to revoke, or the invasion and depletion of the corpus. The division recognized that if a condition subsequent does not occur, the remainderman's interest will remain vested, thereby establishing that it is a present property interest.

Following the *Gorman* decision, the General Assembly enacted § 14–10–113(7)(b), which provides:

> For purposes of subsections (1) to (4) of this section only, "property" and "an asset of a spouse" shall not include *any interest a party may have as an heir at law of a living person or any interest under any donative third party instrument which is amendable or revocable*, including but not limited to third-party wills, *revocable trusts*, life insurance, and retirement benefit instruments, nor shall any such interests be considered as an economic circumstance or other factor.

(Emphasis supplied.)

## B.

Wife argues that her interest in the irrevocable trust falls within the exception to

property created under § 14–10–113(7)(b) through the phrase, "any interest a party may have as an heir at law of a living person." We do not agree with her interpretation.

The parties stipulated to the following facts related to the irrevocable trust. Wife's grandfather, who died in 1947, created the trust in his will. In 1950, the trust was funded with a distribution of $616,031 from the grandfather's estate. Upon the death of wife's grandmother in 1959, the trust received an addition of $527,572.37 from her estate. No further principal was added to the trust.

In 1953, wife's father, the named trust beneficiary, became eligible to receive a distribution of one-half of the original principal. He exercised that right in 1963, when he took a distribution of $308,015.50. Since that time, wife's father has taken no further distributions from principal, but income has been distributed to him on a quarterly basis in accordance with the terms of the trust.

Pursuant to the terms of the irrevocable trust, the Wife's father appointed fifty percent of the trust to wife's mother for her lifetime. The other fifty percent will be distributed to wife and her three siblings upon their father's death. The remainder will then be distributed similarly following the death of wife's mother.

At the time of the permanent orders hearing, wife's father was eighty-three years old. The trust was worth $4,683,434 at the date of the marriage and $6,647,781 on the date of the permanent orders hearing.

Wife maintains that she holds her remainder interest in the trust as an "heir at law" of her father. She relies upon case law that defines that term as a "lineal descendant" and notes that she has acquired her remainder trust interest as a result of being the child and, therefore, the lineal descendant of her father, the life estate beneficiary. She further argues that she was not born when her grandfather's trust was created and that she became a member of the remainder class upon her birth. Accordingly, she urges that the phrase encompasses the remainder interest of any child of a life estate beneficiary

because a person in that class only possesses the interest as a result of being a lineal descendant of a living person. We are not persuaded.

In any statutory interpretation, our task is to determine and give effect to the intent of the General Assembly. *Welby Gardens v. Adams County Bd. of Equalization*, 71 P.3d 992, 995 (Colo.2003). To determine intent, a court should look first to the language employed in the statute. If the words used are plain and unambiguous, our task is accomplished by giving effect to the commonly accepted meaning of those words. *Applehans v. Farmers Ins. Exch.*, 68 P.3d 594, 597 (Colo.App.2003).

When a statute is amended, an intent to change the law is generally presumed. *People in Interest of A.H.*, 74 P.3d 494, 495 (Colo.App.2003).

*Black's Law Dictionary* 727(rev. 7th ed.1999) defines the term "heir" as follows: "a person who, under the laws of intestacy, is entitled to receive an intestate decedent's property, especially real property. Also termed 'heir at law.' "

*Webster's Third New International Dictionary* 1050(rev. ed.1986) defines "heir at law" as: "an heir in whom by operation of the law of intestate succession the habitable estate and part or all of the movables of a decedent are vested."

These definitions reveal that the term "heir at law" pertains to any interest or resource a spouse may expect to inherit from his or her parent were the parent to die intestate. As a practical consequence of that language, the trial court may not consider any such prospective inheritance as either a property interest or as an economic circumstance. By including the phrase "heir at law," the statute thus treats intestate expectancies consistently with interests under a donative third-party instrument that can be revoked or changed. Here, in contrast, wife holds her remainder interest not as an heir at law under the laws of intestacy, but as a vested beneficiary of an irrevocable trust.

*Howlett v. Greenberg*, 34 Colo.App. 356, 530 P.2d 1285 (1974), relied on by wife, does not support her position. Under that case,

heirs at law pursuant to the laws of intestacy are construed to mean lineal descendants of the decedent for purposes of determining who has a proprietary interest in a Colorado wrongful death judgment. *See also, Whitenhill v. Kaiser Permanente,* 940 P.2d 1129, 1131 (Colo.App.1997).

Because we have concluded that the plain language of the statute is clear, we need not consider other interpretive aids. Nevertheless, because of the extensive legislative discussion surrounding the passage of § 14–10–113(7)(b), we explore the legislative history and conclude that our plain language interpretation is consistent with the legislative intent. *See Welby Gardens v. Adams County Bd. of Equalization, supra,* 71 P.3d at 995.

The legislative history shows that § 14–10–113(7)(b) was adopted to overturn the holding in *In re Marriage of Gorman, supra,* that a vested remainder interest in a revocable or modifiable trust is a property interest subject to division. Speakers on behalf of the bill specifically referenced the *Gorman* decision and explained that subsection (7)(b) was drafted as a noncompromise measure to accomplish a complete reversal of that holding. The speakers also clearly advised that the statutory change did not address the holding in *In re Marriage of Balanson, supra,* and was not intended to change the classification of remainder interests in irrevocable trusts as property subject to division. Particularly, one speaker commented that the "heir at law" phrase "applied to anything a parent might leave a child even without a will." Hearings on S.B. 02–160 before the Senate Judiciary Committee and the House Judiciary Committee, 63rd General Assembly, Second Regular Session (Jan. 9, 2002).

■ Thus, the legislative history confirms that the General Assembly relied upon the plain meaning of "heir at law." Additionally, it reveals that the statute applies only to remainder interests in trusts that are revocable or amendable, and not to remainder interests in irrevocable trusts. *See In re Marriage of Davisson,* 797 P.2d 809 (Colo.App.1990)(determining legislative intent based upon ordinary meaning of statutory language and legislative history). Consequently, we conclude that the statutory change effected by § 14–10–113(7)(b) did not apply to wife's vested remainder interest in her grandfather's irrevocable trust. Thus, the trial court properly considered that interest.

C.

Our prior analysis establishes that, pursuant to § 14–10–113(7)(b), wife's remainder interests in her parents' revocable trusts are not property interests to be considered by the court.

However, husband contends that any issue with respect to the revocable trusts is moot because the trusts have been revoked, although that fact does not appear in the record on appeal. At oral argument, wife conceded that the trusts have, in fact, been revoked. We accept the parties' representations and agree that any issue related to those trusts is moot.

Further, it is clear from the trial court's order that the property division here was made without any consideration of the revocable trusts. Thus, we decline to address the applicability of § 14–10–113(7)(b) to the parents' revocable trusts, as no purpose would be served by considering it on appeal.

D.

Because we conclude that wife's interest in her grandfather's irrevocable trust is property under the statute and that any issues regarding the revocable trusts are moot, we need not consider husband's alternative argument that application of § 14–10–113(7)(b) here is unconstitutionally retrospective.

II.

■ Wife further contends that the trial court erred by including the marital appreciation of her irrevocable trust interest in the marital estate. She argues that any increase in value was a gift because it resulted from her father's decision, as the life estate beneficiary, to focus investment of the trust corpus on growth rather than income production. Wife also argues that her vested remainder interest is not acquired until it ripens into an

actual possessory interest, which did not happen during the marriage. We disagree.

The trial court found that wife's remainder interest in her grandfather's irrevocable trust was a gift, vested long before her marriage to husband, and was therefore separate property. We agree with the trial court's conclusion, which is consistent with the holding in *In re Marriage of Balanson, supra,* 25 P.3d at 41–42.

*In re Marriage of Balanson, supra,* also holds that the appreciation in a vested remainder interest in an irrevocable trust during the course of the marriage constitutes marital property under § 14–10–113(4), C.R.S.2003. We cannot distinguish wife's interest in her grandfather's irrevocable trust from the trust interest at issue in *Balanson.* Because we must follow precedent set by the supreme court, *Anstine v. Churchman,* 74 P.3d 451 (Colo.App.2003), we conclude that the trial court properly determined that any increase in the value of wife's interest during the marriage was marital property subject to division. Wife cites certain out-of-state cases in support of her argument that her remainder interest is not acquired until it becomes possesory. However, because our conclusion rests on established Colorado Supreme Court precedent, we need not consider those out-of-state cases.

### III.

■ We also reject wife's argument that the trial court erred both in determining that wife's remainder interest in the irrevocable trust appreciated during the marriage and in determining the value of that appreciation.

■ Trial courts are vested with broad discretion to fashion an equitable division of the parties' property in a dissolution proceeding. *In re Marriage of Antuna,* 8 P.3d 589 (Colo.App.2000). Further, the determination of value is within the trial court's discretion based upon a consideration of all the relevant circumstances. *In re Marriage of Mohrlang,* 85 P.3d 561 (Colo.App.2003).

■ When determining the present value of a vested interest in a trust that is subject to divestment based on a condition subse-

quent, a variety of circumstances should be considered, including actuarial information concerning the life expectancy of the life estate beneficiary and information concerning the future distributions to that beneficiary. *In re Marriage of Balanson, supra,* 25 P.3d at 43 n. 6.

Here, the trial court valued the marital appreciation in wife's interest at $313,962. This calculation was based upon her proportional share in the overall growth of the trust during the marriage discounted at a rate of six percent over her father's life expectancy of 6.7 years. The court then awarded husband $120,867.50, one-half to be paid within sixty days after wife becomes entitled to one-half of her remainder interest upon her father's death and the other half after her mother dies, thereby ending her life estate created by father's testamentary power of appointment.

Wife contends that the trial court's valuation is defective because it is not based upon expert testimony and because it did not apply a discount rate that sufficiently accounted for the effect of her mother's life estate, trustee fees, actual and accumulated tax liabilities for corpus gains, and market changes in the value of the trust principal. Wife also asserts that the trial court's order is deficient because it does not explain the reason it used a discount rate of six percent. We are not persuaded.

■ The valuation of future payments is normally the subject of expert testimony, usually from an actuary. However, when a party fails to present such information to the trial court, that party cannot later complain that the valuation rendered is insufficient. *In re Marriage of Zappanti,* 80 P.3d 889 (Colo.App.2003).

Here, the trial court applied the discount rate submitted by husband and referred to the mortality table in § 13–25–103, C.R.S. 2003. It also recognized the nonpossessory nature of wife's interest and, to accommodate the effect of her mother's life estate and the likelihood that her father would exercise the power of appointment, it deferred payment of husband's share until wife actually becomes

entitled to any funds on the death of her father and mother.

■ Wife asserts that the trial court erred in rejecting her argument that capital gains taxes should be considered. However, there was evidence in the record that, at the death of wife's father, there would be no capital gains tax due on the distribution of the trust corpus and that any tax consequences to the trust that might reduce the trust corpus would not be material. Moreover, although various scenarios were suggested regarding the potential impact of capital gains tax, wife did not provide any calculations or any explanation of how such a factor could be reflected in the discount rate. In that regard, we note that a trial court is not obligated to consider hypothetical tax implications. *See In re Marriage of Bayer,* 687 P.2d 537 (Colo.App.1984)(no error in failing to account for capital gains taxes that husband might incur if he sold his condominium).

■ Wife also argues that the trial court improperly applied the subtraction valuation method rather than using a time-rule formula. The time-rule formula is an approved method for valuing pensions because it recognizes that an employee's ability to enhance the future retirement benefit after the marriage frequently builds on the foundation of work and efforts undertaken during the marriage and enables the spouse to share some benefit of the post-dissolution enhancements. *In re Marriage of Hunt,* 909 P.2d 525 (Colo. 1995); *In re Marriage of James,* 950 P.2d 624 (Colo.App.1997).

The reasons for applying the time-rule formula do not exist in this case. The value of the trust is unrelated to any efforts taken by wife or husband, post-dissolution "enhancements" are irrelevant, and other than that the subtraction method simply reduced the value of wife's present share, wife has not explained why the time-rule produces a more accurate and fair apportionment of the trust interest. Thus, we conclude the trial court had discretion to use the subtraction method here.

Based on the limited information from which the trial court could determine value,

we conclude that its calculations were both ascertainable from its order and reasonable. *See In re Marriage of Plesich,* 881 P.2d 379 (Colo.App.1994)(in dissolution actions, a trial court has discretion to arrive at its own determination of value, and its valuation will be upheld if it is reasonable in light of the evidence as a whole). Moreover, we regard the relatively equal division of the marital property as equitable in light of the parties' respective financial circumstances. *See In re Marriage of Eisenhuth,* 976 P.2d 896 (Colo. App.1999).

## IV.

■ Wife also contends that the trial court erred in determining that husband's car was his separate property. We disagree.

The trial court found that the car, which was purchased by husband during the marriage, had a net equity of $8320. It determined that the car was husband's separate property because the $10,000 down payment came from the sale of a vehicle he owned prior to the marriage. The court also found that no marital funds were used to purchase the car.

Wife argues the trial court's classification of the car as separate property was erroneous based upon husband's testimony that he purchased the new car before he sold the old car and that he also took out a $25,000 loan which was later paid off with marital funds.

■ The initial step a court must make in evaluating a marital estate for distribution is to determine whether an asset is marital, that is, acquired during the marriage and subject to division, or separate property, which is shielded from distribution. Section 14–10–113, C.R.S.2003; *In re Marriage of Hunt, supra.*

■ Property acquired by either spouse during the marriage is presumed marital, as is the appreciation in the value of separate property and any income produced by separate assets during the marriage. Section 14–10–113(3)–(4), C.R.S.2003; *In re Marriage of Bartolo,* 971 P.2d 699 (Colo.App.1998). However, the marital property presumption can be overcome by evidence establishing that

the property in question was acquired by a method listed in § 14–10–113(2), C.R.S.2003, including subparagraph (2)(b), which excludes property from the marital estate that was acquired in exchange for premarital property.

 To claim separate ownership successfully under the exchange provision, a spouse must trace the property by proving a series of exchanges back to an original asset. *In re Marriage of Seewald*, 22 P.3d 580 (Colo.App.2001).

Here, in addition to the testimony relied upon by wife, husband also testified that he purchased the new car before the old one sold and that it was always his intention to apply the sale proceeds received toward the new car. The only separate interest husband claimed in the car was the $10,000 down payment. Wife similarly testified that husband used the money from his old vehicle to purchase the new vehicle, and she also acknowledged in her financial affidavit that the marital value of the new car should be reduced by $10,000 for the trade-in value of the old car.

Although the evidence was conflicting concerning the use of financing and marital funds, the record contains no dispute concerning the fact that husband made a $10,000 contribution of his separate funds toward the car. Therefore, to the extent the equity interest is less than the amount of husband's separate contribution, we are satisfied that the trial court did not abuse its considerable discretion in classifying that asset as separate property. *See In re Marriage of Foottit*, 903 P.2d 1209 (Colo.App.1995)(the classification of property as marital or nonmarital is a legal determination that is dependent on the resolution of factual disputes).

## V.

 Finally, we also disagree with wife's contention that the trial court erred in classifying the furniture in the marital residence as marital property.

The trial court found that the furniture was paid for by wife's mother, who had encouraged wife and husband to upgrade their furnishings when they purchased the marital residence. The court rejected wife's claim that the furniture was a gift to her from her mother and, therefore, her separate property. Instead, it found that the parties had shopped for the furniture together and that they contemplated it would be marital property.

 The marital presumption can also be overcome by showing that the property was acquired by gift. Section 14–10–113(2)(a), C.R.S.2003; *In re Marriage of Bartolo, supra*. To qualify as a gift, a transfer of property must involve a simultaneous intention to make a gift, delivery of the gift, and acceptance of the gift. *In re Marriage of Balanson, supra*. That determination hinges fundamentally on the intent and acts of the donor and recipient, which, in turn, are questions of fact for the trial court to resolve. *In re Marriage of Bartolo, supra*.

We conclude that, contrary to the court's finding, the furniture was a gift from wife's mother. However, the evidence overwhelmingly supports a determination that the gift was made to both parties as a contribution to the marital estate. Therefore, the trial court's classification of this asset does not constitute an abuse of discretion. *See In re Marriage of Anderson*, 525 P.2d 499 (Colo. App.1974)(not published pursuant to C.A.R. 35(f))(upholding division of real property gifted by parent to both parties as part of the marital estate).

The judgment is affirmed.

Judge DAILEY and Judge PIERCE * concur.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2003.