In re the MARRIAGE OF Bonnie L. BALANSON, Appellant,

and

Richard D. Balanson, Appellee.

No. 03CA0765.

Colorado Court of Appeals, Div. II.

Sept. 23, 2004.

Certiorari Denied Feb. 22, 2005.

Litvak, Litvak, Mehrtens, & Epstein, P.C., Steven B. Epstein, Janine C. Treu, Denver, Colorado, for Appellant.

Stevens, Littman, Biddison, Tharp & Weinberg, LLC, Andrew C. Littman, Craig A. Weinberg, Boulder, Colorado, for Appellee.

Opinion by Judge NEY.*

Bonnie L. Balanson (wife) appeals from the revised permanent orders entered by the trial court in this dissolution action between her and Richard D. Balanson (husband). We reverse and remand for reconsideration.

## I.

The primary issue in this appeal relates to the value of the marital appreciation of wife's remainder interest in a trust at the time of the dissolution of marriage.

A trust (the master trust) was created during the marriage in 1976 by wife's parents and reserved to them the power to alter, amend, or revoke the trust until one of them died. Wife's mother died in 1990, at which time the master trust became irrevocable and was divided into Trust A and Trust B. Under the trust instrument, wife's father was to pay the net income from Trusts A and B to himself during his lifetime, had discretion to invade the trust corpus for his support, care, and maintenance, and was to invade the corpus of Trust A before Trust B.

Upon his death, any portion of the corpus of Trust A that wife's father did not devise through his will would go into Trust B. The trustee was required to then divide Trust B for the benefit of wife and her living siblings.

In 1997, the trial court entered permanent orders as part of the dissolution of marriage between wife and husband. The trial court determined that wife's interest in the master trust was a vested remainder subject to divestment if she predeceased her father, that the interest was wife's separate property, but that any appreciation thereof during the marriage constituted marital property. The trial court determined half of the trust would be distributed to wife so long as her father

predeceases her, valued such portion at $650,000, and awarded it in full to wife.

Wife appealed the property distribution and maintenance award, and a division of this court affirmed in part, reversed in part, and remanded the case with directions. *In re Marriage of Balanson*, 996 P.2d 213 (Colo.App.1999)(*Balanson I*).

The supreme court granted certiorari to, as relevant here, "determine the appropriate treatment in a dissolution of marriage case of ... future interests in family trusts" and an issue relating to maintenance. *In re Marriage of Balanson*, 25 P.3d 28, 32 (Colo.2001)(*Balanson II*).

The supreme court held that although the father could invade the corpus for his own support, care, and maintenance after the mother's death, that power only rendered wife's irrevocable remainder interest uncertain but did not convert it into a mere expectancy. Thus the supreme court concluded that wife's irrevocable remainder interest was separate property and the appreciation thereof during the marriage constituted marital property subject to division.

The supreme court also held that "[s]uch appreciation is to be calculated by determining the extent to which the property's present value at the time of the decree exceeds its value *at the time of acquisition.*" *Balanson II, supra*, 25 P.3d at 42 (emphasis added). Consequently, the supreme court ruled that the trial court erred because it determined that the marital property subject to division was the entire present value at the time of the decree and not the extent to which the present value exceeds the value at the time of acquisition. Thus, the supreme court ordered that on remand, the trial court should "calculate the trust's appreciation, by determining the extent to which the trust's present value at the time of the decree exceeded its value at the time it was *created.*" *Balanson II, supra*, 25 P.3d at 42–43 (emphasis added). In footnote six of its opinion, the court concluded that the trial court could consider a variety of circumstances when determining the present value of the trust,

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2003.

"including actuarial information concerning the life expectancy of Wife's father and information concerning the probability and extent to which the father will need to invade principal for his maintenance." *Balanson II, supra*, 25 P.3d at 43 n. 6.

The parties and we agree that the supreme court's mandate was not a final order.

On remand, the trial court conducted three days of hearings in April and May 2002. In March 2003, the trial court issued revised permanent orders.

However, in June 2002, after the hearing but prior to the trial court's ruling, the General Assembly enacted § 14–10–113(7)(b) and (c), C.R.S.2003. Colo. Sess. Laws 2002, ch. 270 at 1054–55.

Section 14–10–113(7)(b) provides that "[f]or purposes of subsections (1) to (4) of this section only, 'property' and 'an asset of a spouse' shall not include ... any interest under any donative third party instrument which is amendable or revocable, including but not limited to ... revocable trusts." The purpose of this amendment was to reverse completely the decision by a division of this court in *In re Marriage of Gorman*, 36 P.3d 211 (Colo.App.2001), that an interest in a revocable trust constituted property for purposes of division in a dissolution proceeding. *See In re Marriage of Dale*, 87 P.3d 219 (Colo.App.2003).

Section 14–10–113(7)(c) provides the following concerning the effective date of the amendment:

(I) The provisions of this subsection (7) shall apply to all causes of action filed on or after July 1, 2002. The provisions of this subsection (7) shall also apply to all causes of action filed before said date in which a final property disposition order concerning matters affected by this subsection (7) was not entered prior to July 1, 2002.

(II) For purposes of this paragraph (c), "final property disposition order" means a property disposition order for which the time to appeal has expired or for which all pending appeals have been finally concluded.

In its March 2003 findings of fact and conclusions of law, the trial court did not consider § 14–10–113(7)(b) or (c). The court found that the master trust was funded in 1976 with the home owned by wife's father, which then had a fair market value of $170,000, plus cash he had on hand, and that no additional assets had been added to the trust corpus. The trial court also concluded that when wife's mother died in 1990, the master trust was divided into Trust A, in which wife had only an expectancy interest, and Trust B, the corpus of which consisted solely of the home. The trial court concluded that wife's vested remainder interest in Trust B constituted property and had a value of $900,000 in 1997, when the decree of dissolution was entered.

Applying the subtraction method, the trial court determined that the trust appreciated in value during the marriage in the amount of $730,000 and that wife's fifty-percent share of that increase, as one of two beneficiaries, was $365,000.

The court found that the home would probably appreciate at roughly the same rate for which it might otherwise be discounted, that the possibility wife would predecease her eighty-year-old father was negligible, and that the father should have no need to invade the corpus of Trust B because he maintained long-term health insurance and would first invade the corpus of Trust A.

The trial court thus concluded that the value of the trust should not be depreciated based on the remaining life expectancy of wife's father or his right to invade the corpus for his own benefit and that it would be equitable to divide equally the net increase in value of wife's separate trust interest between the parties.

Accordingly, the trial court ordered wife to make an equalization payment to husband of $151,298 upon her father's death.

In reconsidering the prior award of maintenance, the trial court considered the changes in circumstances since 1997, including the fact that wife sold the former marital residence in May 1998 and that the parties' daughter became emancipated and left for college in May 1999. The court concluded that wife's reasonable monthly needs of $12,500 at the time of the decree were reduced to $7370 in May 1999 and to $6854 in

2002, but should include $1000 per month for retirement savings until wife reaches the age of sixty-two.

After considering the changes in the parties' incomes, the court awarded wife maintenance of $8700 for the period from October 1997 through May 1999, $3000 per month from June 1999 through March 2002, and $1000 per month thereafter until she reaches the age of sixty-two.

## II.

Wife first contends the trial court erred as a matter of law by failing to apply § 14–10–113(7)(b) in calculating the marital appreciation of her interest in the trust. She maintains that under the mandatory language of § 14–10–113(7)(b), her interest in the trust could not be classified as property until the trust became irrevocable in 1990 after her mother's death. We agree.

Marital property includes all property acquired by either spouse during the marriage except, as relevant here, property acquired by gift, bequest, or devise. Section 14–10–113(2)(a), C.R.S.2003.

A remainder interest in an irrevocable trust represents a present fixed right to future enjoyment that gives rise to a vested property interest in the trust even if that interest is subject to complete divestment or defeasance. *Balanson II, supra; In re Marriage of Dale, supra.*

## A.

Although not explicitly argued in the briefs, at oral argument husband asserted that we may not address the issue of whether wife's interest in the trust, while it was still revocable between 1976 and 1990, was property because wife did not raise it in the prior proceedings. Relying on *In re Marriage of Jones,* 812 P.2d 1152 (Colo.1991), and *In re Marriage of Rosenblum,* 43 Colo.App. 144, 602 P.2d 892 (1979), wife argues that the ruling in *In re Marriage of Gorman, supra,* created new law deeming an interest in a revocable trust to be property and that before that time, there was no basis to characterize such an interest as property.

Here, the trial court specifically rejected wife's argument "that the amount of appreciation should only be computed between 1990

(the date the Trust became irrevocable) and 1997 (the date of the Decree)." We therefore conclude the argument was sufficiently presented to the trial court before its determination of the permanent orders, and we may address the issue. *See Town of Frederick v. N. Am. Res. Co.,* 60 P.3d 758 (Colo.App. 2002).

We also conclude that before *In re Marriage of Gorman, supra,* the case law did not characterize revocable trusts as property; therefore, we agree with wife that *Gorman* created new law. In *Gorman,* the relevant asset was the husband's interest in a revocable trust created by his mother. During her lifetime, the mother could revoke or amend the trust at any time. Upon the mother's death, the corpus of the trust was to be distributed to the husband and his siblings. The mother was alive at the time of the property distribution. The trial court held that the husband's interest was a mere expectancy. The *Gorman* division reversed and "concluded the recent opinion in [*Balanson II, supra,*] issued after the trial court's decision in this case, mandates a contrary conclusion." *In re Marriage of Gorman, supra,* 36 P.3d at 212.

The *Gorman* division further concluded that the husband had a vested remainder interest in the trust subject to a condition subsequent, which was the mother's exercise of her right to revoke the trust. The division extended the reasoning of *Balanson II, supra,* and reasoned that the mother's right to revoke did not convert the husband's vested remainder property interest into a "mere expectancy." *In re Marriage of Gorman, supra,* 36 P.3d at 213.

Both *In re Marriage of Rosenblum, supra,* and *In re Marriage of Jones, supra,* held that a discretionary irrevocable trust does not create a property interest in the beneficiary spouse. Although the interests there were vested, they did not constitute property because any interest in distributions from the trust was dependent on the absolute discretion of the trustee. Thus, both cases necessarily differentiated between a vested property interest and its acquisition for purposes of § 14–10–113(2)(a).

This distinction was explicit in *Mey v. Mey*, 79 N.J. 121, 398 A.2d 88 (N.J.1979), cited by our supreme court in *In re Marriage of Jones, supra*. There, by testamentary trust, the husband had a vested remainder subject to divestment, with the right to distribution of the trust principal at age twenty-five. The court held that the husband did not "legally and beneficially acquire[ ]" property in the trust until age twenty-five, when he acquired unimpaired control and totally free use and enjoyment. *Mey v. Mey, supra*, 398 A.2d at 89; *see also Frank G.W. v. Carol M.W.*, 457 A.2d 715, 724, 726 (Del.1983)("customary [usages] of the concept of vesting are clearly in no way relevant to the question of effecting an equitable distribution" upon divorce; under statutory definition of "acquired," assets are to be characterized in regard to the actual or constructive possession by the parties); *Davidson v. Davidson*, 19 Mass.App.Ct. 364, 474 N.E.2d 1137, 1144 (1985)(husband's interest in testamentary trust was property, even though his right to distribution was subject to the condition of survivorship; but his right under mother's will was mere expectancy where mother was alive and could have changed her will); *Trowbridge v. Trowbridge*, 16 Wis.2d 176, 114 N.W.2d 129, 131 (1962)(husband's interest in testamentary trust was property, even though his right to distribution was subject to the condition of survivorship).

In light of our conclusion, we reject husband's related contention that the law in effect at the time of the decree or hearing would require another result.

### B.

■ We also reject husband's contention that the trial court was required simply to follow the unambiguous mandate of the supreme court in *Balanson II*, which husband interprets as referring to the creation of the master trust in 1976, notwithstanding the intervening legislative enactment of § 13–10–113(7)(b).

■ Generally, a mandate from an appellate court must be followed in subsequent proceedings on remand, and the supreme court's mandates are binding as the law of the case, absent new evidence or arguments. *See Mayer v. Sampson*, 157 Colo. 278, 402

P.2d 185 (1965); *Gavend v. Malman*, 946 P.2d 558 (Colo.App.1997).

■ The General Assembly's legislative powers include enacting generic legislation that clarifies and resolves preexisting issues and applies that resolution to pending cases and controversies. *City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427 (Colo.2000).

■ The separation of powers doctrine imposes on the judiciary a proscription against interfering with the legislative branch. *People v. Zapotocky*, 869 P.2d 1234 (Colo.1994); *People in Interest of R.W.V.*, 942 P.2d 1317 (Colo.App.1997); *see Coffman v. State Farm Mut. Auto. Ins. Co.*, 884 P.2d 275, 279 n. 10 (Colo.1994)(in exercising its legislative power, the General Assembly neither repeals nor overrules cases decided by the supreme court; the use of such terms "simply describes the practical effect particular legislation may have on previously decided cases").

The supreme court's mandate in *Balanson II* remanded the case to the trial court for reconsideration of the division of marital property consistent with the views expressed in that opinion. The opinion unambiguously confirms the court's prior holding in *In re Marriage of Jones, supra*, that "a beneficiary's interest in a discretionary trust was not property, but merely an expectancy" because "one's enforceable contractual right gives rise to a property interest while, an unenforceable interest constitutes a mere expectancy." *Balanson II, supra*, 25 P.3d at 41. The court then held that, at the time of the hearing on property division, wife had "a future vested interest not within the discretion of the trustee to withhold" and, thus, wife's interest in the family trust at that time did not constitute a mere expectancy but property. *Balanson II, supra*, 25 P.3d at 41.

Thus, we conclude that the supreme court's mandate required the trial court, on remand to determine the appreciation in the value of wife's irrevocable interest by determining the extent to which the property's value at the time of the decree exceeded its value at the time wife acquired her property interest, that is, the enforceable interest that

could not be terminated at the discretion of the trustee.

The supreme court's mandate in *Balanson II* was unambiguous. In reading and reconciling the mandate in the context of the entire opinion, we conclude a fair reading of the mandate is consistent with the result of applying § 14–10–113(7)(b) here. The supreme court's analysis of wife's interest was limited to the time after her mother's death in 1990, when the trust became irrevocable. Therefore, the mandate necessarily referred to the creation of Trusts A and B, and not the master trust.

The supreme court's holding, that the trial court erred in characterizing wife's share in the trust as the marital portion of the trust, did not specifically address the question at issue here. The supreme court considered only whether the trial court erred in failing to consider only the appreciation of wife's interest in the trust, instead of the value of wife's interest in the trust, to be marital property subject to division. It did not address the issue of when wife's interest in the trust was acquired.

■ We also note the General Assembly acted within its legislative power in applying the statutory change to all causes of action filed before the statute's effective date in which a final property disposition order was not entered prior to the effective date. Section 14–10–113(7)(b) was not intended to address the supreme court's holding in *Balanson II, supra,* and "was not intended to change the classification of remainder interests in irrevocable trusts as property subject to division." *See In re Marriage of Dale, supra,* 87 P.3d at 224 (summarizing legislative history).

The Colorado Supreme Court has upheld a similar enactment's application to a pending lawsuit. In *City of Greenwood Village v. Petitioners for Proposed City of Centennial, supra,* the trial court was asked to consider a petition for incorporation of the proposed City of Centennial and other competing petitions for incorporation and annexation of the same area. While the annexation petition was pending, the General Assembly enacted § 31–12–118(2)(b), C.R.S.2003, which was effective immediately and required certain annexation proceedings to be held in abeyance.

The trial court determined that the plain language of the revised statute applied to the pending suit.

The *Greenwood Village* court held that the trial court was correct in doing so and that it must proceed to apply the provisions contained in the revised statute. *See Perry v. City of Denver,* 27 Colo. 93, 59 P. 747 (1899)(pending annexations are subject to additional procedures of statutes enacted by the General Assembly after initiation of the pending but as yet uncompleted annexation); *see also Gen. Tel. Co. v. Johnson,* 103 Ill.2d 363, 83 Ill.Dec. 133, 469 N.E.2d 1067 (1984)(holding legislature's intent to change tax liability retroactively was permissive exercise of legislative power); *Schlenz v. Castle,* 84 Ill.2d 196, 49 Ill.Dec. 322, 417 N.E.2d 1336 (1981)(rejecting separation of powers challenge where legislature's curative act did not have effect of setting aside final adjudication); *Andresen v. Andresen,* 317 Md. 380, 564 A.2d 399, 401 (1989)(affirming dismissal of motion to modify property distribution where final dissolution decree was entered, Congress enacted relevant law and intended retroactive effect, but motion did not allege sufficient facts to set aside final order); *Atlantic City Casino Ass'n v. City of Atlantic City,* 217 N.J.Super. 277, 525 A.2d 1109(rejecting separation of powers challenge where litigation upon which legislature purportedly intruded was still pending), *remanded,* 102 N.J. 323, 508 A.2d 203 (1985); *Bowen v. Mabry,* 154 N.C.App. 734, 572 S.E.2d 809 (2002)(General Assembly has power to amend statute that it believes has been misconstrued by the courts and "undo any perceived undesirable past consequences of misinterpretation of its work product" unless retroactive application impairs vested rights, quoting 82 C.J.S. *Statutes* § 411, at 568 (1999)); *cf. In re Kirchner,* 164 Ill.2d 468, 208 Ill.Dec. 268, 649 N.E.2d 324 (1995)(refusing to apply statute that changed final judicial determination of parties' rights).

Further, it is undisputed that, under § 14–10–113(7)(c)(II), a final property disposition order has not yet been entered in this case.

## C.

■ Husband argues that retroactive application of § 14–10–113(7)(b) is unconstitu-

tionally retrospective. Although he does not dispute that the General Assembly intended § 14–10–113(7)(b) to be retroactive, he maintains that it confiscates his vested property rights and violates his right to due process. We conclude § 14–10–113(7)(b) is not unconstitutionally retrospective.

■ We employ a two-step inquiry in assessing whether a statute is unconstitutionally retrospective. First, we must determine whether the General Assembly intended the challenged statute to operate retroactively. *See In re Estate of DeWitt*, 54 P.3d 849 (Colo.2002).

■ A statute is retroactive when it operates on transactions that have already occurred or rights and obligations that existed before its effective date. The term retrospective applies only to legislation whose retroactive effect violates the constitutional prohibition. *City of Greenwood Village v. Petitioners for Proposed City of Centennial, supra.* The statute must reveal a clear legislative intent of retroactivity. *In re Estate of DeWitt, supra.*

■ Second, if we determine that the General Assembly intended retroactivity, we determine whether the challenged statute is unconstitutionally retrospective. *See In re Estate of DeWitt, supra.* As relevant here, a statute is retrospective if it takes away or impairs vested rights acquired under existing laws. *Jefferson County Dep't of Soc. Servs. v. D.A.G.*, 199 Colo. 315, 607 P.2d 1004 (1980).

■ A vested right is more than a mere expectation. It is legal or equitable title to the present or future enjoyment of property. *Kuhn v. State*, 924 P.2d 1053 (Colo.1996).

■ A vested right has an independent existence such that it is no longer dependent for its assertion upon the common law or statute under which it may have been acquired. The repeal of a statute or the abrogation of the common law from which a right may have originated does not erase that right if it is vested, but the right remains enforceable without regard to such repeal or abrogation. *Ficarra v. Dep't of Regulatory Agencies*, 849 P.2d 6 (Colo.1993).

■ There is no bright line test for determining whether a right is vested, and

courts should consider (1) whether the public interest is advanced or retarded, (2) whether the statute gives effect to or defeats the bona fide intentions or reasonable expectations of the affected individuals, and (3) whether the statute surprises individuals who have relied on a contrary law. *In re Estate of DeWitt, supra.*

■ A statute is not unconstitutional merely because the facts upon which it operates occurred before its adoption. *People v. D.K.B.*, 843 P.2d 1326 (Colo.1993).

■ A determination that a statute implicates a vested right is not dispositive as to its retrospectivity because a vested right may be balanced against public health and safety concerns, the state's police powers to regulate certain practices, and other public policy considerations. *In re Estate of DeWitt, supra.* To be permissibly retroactive, the statute must bear a rational relationship to the legitimate governmental interest that is asserted. *In re Estate of DeWitt, supra; Ficarra v. Dep't of Regulatory Agencies, supra.*

Here, the parties do not dispute, and we agree, that the General Assembly intended § 14–10–113(7)(b) to have retroactive effect. *See* § 14–10–113(7)(c).

We acknowledge husband had an equitable interest in wife's separate property at the time the petition for dissolution was filed. *See* § 14–10–107(4)(b)(I), C.R.S.2003 (upon filing of petition for dissolution, automatic temporary injunction restrains parties from transferring or disposing of marital property). However, it is undisputed that the supreme court's mandate in *Balanson II* was not a final order. Therefore, we conclude husband had no vested interest in such property for purposes of our due process analysis.

Husband's reliance on *Shearton Service Corp. v. Johnson*, 5 P.3d 395 (Colo.App.2000), is misplaced. There, the defendant's wife quitclaimed her separate real property to herself and the defendant during their marriage. When the defendant defaulted on a promissory note, the plaintiff reduced the debt to judgment and recorded it against the defendant. Two years later, the defendant recorded the quitclaim deed from the wife.

When the plaintiff issued a notice to levy upon the property, the wife intervened because the property was the subject of the husband and wife's pending dissolution of marriage action. At the wife's request, the trial court ordered a stay of execution until the dissolution court determined whether the property was marital or separate property.

A division of this court concluded that the property was subject to the plaintiff's claim against the husband. At issue there were the priorities to be given the wife's equitable interest and the plaintiff's perfected interest in the husband's share of the property. The division ultimately found that the wife had a vested interest in the husband's share of the property upon filing for dissolution of marriage, but that the plaintiff perfected its claim to the property beforehand, and the wife's interest was subordinate to the plaintiff's.

In holding that the wife had a vested interest in the husband's share of the property, the *Shearton* division relied on *In re Questions Submitted by United States District Court*, 184 Colo. 1, 517 P.2d 1331 (1974). At issue there was the government's claim to tax a husband's capital gain on property transferred to his wife in a dissolution of marriage property settlement. The court held that a spouse's interest in the separate property of the other spouse is completely inchoate during the marriage, but "at the time of the filing of the dissolution action in which the division of property will be later determined, a vesting takes place." *In re Questions Submitted by United States Dist. Court, supra,* 184 Colo. at 9, 517 P.2d at 1335.

Here, however, there is no issue relating to a transfer of property, and we conclude *In re Questions* is distinguishable. *See In re Marriage of Carruthers,* 40 Colo.App. 278, 577 P.2d 773 (1977)(distinguishing *In re Questions* and rejecting argument that date of filing of petition for dissolution was dispositive for determining whether property is within the marital estate).

In addition, in both *Shearton* and *In re Questions,* the issue of vesting was analyzed to determine future property interests, not for due process purposes, and we therefore conclude the holdings are distinguishable.

*See Frank G.W. v. Carol M.W., supra,* 457 A.2d at 724 (notion of a vested interest played important part in development of the law of future interests, and "in a quite different context the phrase, 'vested rights,' is occasionally used to denote something to which constitutional guarantees may apply").

Here, notwithstanding the absence of explicit discussion by lawmakers regarding the reason they amended § 14–10–113(7)(b) retroactively, the legislative history shows that the intent of the General Assembly was to reverse the effect of the *Gorman* decision, but not to change the classification of remainder interests in irrevocable trusts as property subject to division in a dissolution action between spouses. *In re Marriage of Dale, supra.*

We conclude, therefore, that the General Assembly intended to safeguard estate planning and choice of the donor to provide property to the named beneficiary while the third-party instrument remained amendable or revocable. *See, e.g., In re Marriage of Dale, supra* (revocable trusts terminated after pronouncement of *Gorman*); *cf. In re Estate of Klarner,* 98 P.3d 892 (Colo.App.2003)(when interpreting a trust, court must give effect to the intent of the settlor or testator).

The result achieved by the amended statute that, a revocable trust does not constitute an asset or property of a spouse in dissolution of marriage action, is consistent with the position taken by other states. *See, e.g., In re Marriage of Centioli,* 335 Ill.App.3d 650, 269 Ill.Dec. 814, 781 N.E.2d 611 (2002)(wife's status as beneficiary of husband's inter vivos revocable trust was mere expectancy and could not be characterized as a vested property interest); *In re Marriage of Beadle,* 291 Mont. 1, 968 P.2d 698 (1998)(because spouse's interest in revocable trust was contingent and could not be ascertained until settlor's death, it should not be included in marital estate).

Here, because the appellate process was not yet complete, the new rule of law prohibiting characterization of wife's revocable trust interest as property may be fairly applied even if it may reduce the eventual award to husband. *See In re Marriage of*

*Wolford,* 789 P.2d 459 (Colo.App.1989)(new rule of law classifying military pension as property should not be applied to cases in which final judgment has been entered by the trial court and appellate review is either completed or barred).

Thus, we conclude that retroactive application of § 14–10–113(7)(b) was necessary to ensure the fair and equitable classification and distribution of marital property and, therefore, does not constitute unlawful retrospective legislation. *See In re Estate of De-Witt, supra.*

The California family law cases relied upon by husband are distinguishable because they concerned the existence and rebuttal of the marital presumption, and the amended statute changed the consequences that resulted from acts that had already occurred and could not be rectified in response to the legislation. *Cf.* § 14–10–113(2)(d), C.R.S. 2003 (property excluded by valid agreement of the parties does not constitute marital property). They did not concern, as here, the characterization as property of a spouse's separate interest obtained as an heir at law of a living person or a donee under an amendable or revocable third-party instrument. In contrast, retroactive application of amended statutes was upheld in California when the law redefined community property. *See, e.g., In re Marriage of Bouquet,* 16 Cal.3d 583, 128 Cal.Rptr. 427, 546 P.2d 1371 (1976)(providing that earnings of both spouses, not just husband, constituted community property).

We also reject husband's argument that § 14–10–113(7)(b) does not apply because the trust was irrevocable at the time of the decree. It is undisputed that the trust was revocable between 1976 and 1990 and that this controversy centers on whether wife's interest in the trust was property during that time.

■ We further hold that wife did not acquire an interest in property in the trust at issue here until 1990, when the trust became irrevocable.

Because the court did not apply § 14–10–113(7)(b), we conclude that it erred in calculating the increase in wife's trust interest. Therefore, we reverse the property division and remand the case to the trial court for reconsideration after application of § 14–10–113(7)(b).

### III.

Because this matter must be remanded to the trial court for reconsideration of the property division, it is unnecessary to address the assertion that the trial court erred as a matter of law in failing to discount the value of her remainder interest in the trust to account for the risks of forfeiture.

*But see In re Marriage of Mohrlang,* 85 P.3d 561 (Colo.App.2003), (court did not discount value of the trust because the grandchildren would receive the husband's interest if he predeceased his parents).

### IV.

■ Because it may arise upon remand, we address and reject wife's contention that the trial court erred on reconsideration in decreasing her share of the marital property from sixty percent to fifty percent.

■ The meaning of a remand is to be determined from the reviewing court's disposition of the issues before it. *See In re Marriage of Ashlock,* 663 P.2d 1060 (Colo. App.1983).

Section 14–10–113(1)(c), C.R.S.2003, requires a trial court to consider the economic circumstances of the respective spouses at the time any hearing relating to the division of marital property is held, including a hearing following a remand for the purpose of dividing the property between the parties. *In re Marriage of Wells,* 850 P.2d 694 (Colo. 1993); *see In re Marriage of Martinez,* 77 P.3d 827 (Colo.App.2003).

Nothing in these decisions, or in *Balanson II, supra,* precludes the trial court from changing the percentage distribution of property after properly characterizing and valuing wife's interest in the trust. Thus, the trial court was free to redetermine the appropriate percentage of distribution after considering the current economic circumstances of the parties.

**1048**

## V.

■ In view of the need to reconsider the property division, the trial court on remand will be required again to reconsider the maintenance award, *see Balanson II, supra,* based on the parties' current economic conditions. *See In re Marriage of Wells, supra.*

We are not persuaded, however, that the trial court was restricted from decreasing maintenance from that originally awarded after consideration of the parties' current circumstances. *See In re Marriage of Jones,* 627 P.2d 248 (Colo.1981)(the propriety of an award of maintenance depends upon the inadequacy of the property and earning capacity possessed by the party seeking the award); *cf. In re Marriage of Foss,* 30 P.3d 850 (Colo.App.2001)(where a new child support order is to be made, both parties must be allowed to show their current circumstances).

Wife's reliance on *In re Marriage of Mirise,* 673 P.2d 803 (Colo.App.1983), for the argument that the trial court lacked jurisdiction to decrease maintenance is misplaced and inaccurate. There, because the court had reserved jurisdiction over maintenance, the higher statutory threshold contained in § 14–10–122, C.R.S.2003, did not apply in determining whether the wife could meet her needs, as originally determined.

Nor was the court precluded from modifying the maintenance for various periods based on the circumstances existing during each period. *See In re Marriage of Ward,* 740 P.2d 18 (Colo.1987)(trial court's discretion extends to the amount of maintenance and the mode of payment to meet the needs and abilities of the parties); *cf. In re Marriage of Ashlock, supra* (proper amount of child support under applicable statutory criteria could vary during different time periods).

■ Finally, whether the parties' daughter was living with wife is not relevant to wife's own reasonable and necessary expenses. *Cf. In re Marriage of Serdinsky,* 740 P.2d 521 (Colo.1987)(voluntary financial contributions wife received from her adult children, which were not based on any legal obligation, were not appropriate factors for consideration in determining amount of maintenance).

The judgment is reversed, and the case is remanded to the trial court for reconsideration of the property division and the maintenance award consistent with the views expressed in this opinion.

Judge CASEBOLT and Judge CARPARELLI concur.