Court of Appeals No. 14CA1460
City and County of Denver District Court No. 14DR30052 Honorable Ross B. Buchanan, Judge
In re the Marriage of
Rebecca Vittetoe,
Appellant and Cross-Appellee, and
David Michael Vittetoe,
Appellee and Cross-Appellant.
JUDGMENT AFFIRMED IN PART, VACATED IN PART, 
AND CASE REMANDED WITH DIRECTIONS
Division III
Opinion by JUDGE BOORAS 
Webb and J. Jones, JJ., concur
Announced May 5, 2016
Lubchenco, Kendrick, & Madrid, LLP, Christopher Kendrick, Denver, Colorado, for Appellant and Cross-Appellee
Hulse Law Firm, LLC, Lauren M. Hulse, Littleton, Colorado, for Appellee and Cross-Appellant
 
¶ 1       In this dissolution of marriage proceeding, Rebecca Vittetoe (wife) appeals the district court’s permanent orders as they pertain to the classification of a home (the South Magnolia Way home). David Michael Vittetoe (husband) cross-appeals the district court’s maintenance award to wife. We affirm in part, vacate in part, and remand the property division for further proceedings. We affirm the maintenance award, but we remand for reconsideration in light of any changes in the property division.
¶ 2       The parties married in 1981 and have no children. The primary issues at the permanent orders hearing concerned the division of the marital estate and wife’s maintenance request. The court dissolved the parties’ marriage by decree on June 10, 2014.
I. Husband’s Cross-Appeal
¶ 3       Because husband’s cross-appeal presents us with an issue of first impression, we consider it first. Husband’s sole contention on cross-appeal is that the district court erred when it awarded wife maintenance in an amount that exceeded the statutory “cap” under section 14-10-114(3)(b)(I), C.R.S. 2015. We discern no abuse of discretion.
A. Applicable Principles of Statutory Interpretation
¶ 4        Statutory interpretation presents a question of law that we review de novo. Spahmer v. Gullette, 113 P.3d 158, 162 (Colo. 2005). When interpreting a statute, we adopt an interpretation that best effectuates the legislative purposes. Smith v. Exec. Custom Homes, Inc., 230 P.3d 1186, 1189 (Colo. 2010). We must read and consider the statute as a whole and interpret it in a manner giving consistent, harmonious, and sensible effect to all its parts. Lujan v. Life Care Ctrs. of Am., 222 P.3d 970, 973 (Colo. App. 2009). We give words and phrases their plain and ordinary meanings, and where the statutory language is unambiguous, we do not resort to other rules of statutory interpretation but rather apply the language as written. Reno v. Marks, 2015 CO 33, ¶ 20. However, if the relevant statutory language is ambiguous, we may consider other indicators of legislative intent. Jefferson Cty. Bd. of Equalization v. Gerganoff, 241 P.3d 932, 935 (Colo. 2010).
B. Analysis
¶ 5        As relevant here, section 14-10-114(3)(b)(I) requires the district court to apply the following formula to determine the guideline amount for maintenance:
The amount of maintenance under the guidelines is equal to forty percent of the higher income party’s monthly adjusted gross income less fifty percent of the lower income party’s monthly adjusted gross income; except that, when added to the gross income of the recipient, shall not result in the recipient receiving in excess of forty percent of the parties’ combined monthly adjusted gross income.
§ 14-10-114(3)(b)(I) (emphasis added).
¶ 6        Husband argues that the words “shall not” establish a “cap” on the amount of maintenance that the district court may award. Specifically, he asserts that the plain language of the formula prohibits a district court from entering a maintenance award which exceeds forty percent of the parties’ combined monthly adjusted gross income. We disagree that the plain language is unambiguous.
 
¶ 7        Although the use of the word “shall” in section 14-10-114(3)(b) indicates that the calculation set out in the guideline formula is mandatory, it does not address whether the use of the guidelines themselves is mandatory. Because the statute could be reasonably construed either way, we may refer to extraneous sources such as legislative history and the General Assembly’s own formal expression of its purpose. § 2-4-203(1), C.R.S. 2015; see also Vensor v. People, 151 P.3d 1274, 1277 (Colo. 2007).
¶ 8        The General Assembly repealed and reenacted the maintenance statute, section 14-10-114 — effective January 1, 2014 — determining that courts and litigants would benefit from “a more detailed statutory framework that includes advisory guidelines to be considered as a starting point for the determination of fair and equitable maintenance awards.” § 14-10-114(1)(b)(II); see Ch. 176, sec. 1, § 14-10-114, 2013 Colo. Sess. Laws 639-52. As reenacted, the statute explains in detail the process a district court must follow before it may award maintenance. § 14-10-114(3).
¶ 9       The statute requires the district court to make initial written or oral findings concerning four factors. See § 14-10-114(3)(a). Then, before granting or denying an award of maintenance, the court must (1) consider the guideline amount and term of maintenance, based on the duration of the marriage and the combined gross incomes of the parties; (2) make findings regarding, but not limited to, twelve factors relating to the amount and term of maintenance; and (3) determine whether the party seeking maintenance has met the requirements for a maintenance award. § 14-10-114(3)(b)-(d).
¶ 10     Husband’s position reads subsection (3)(b) in isolation. But, “[t]o properly understand a statute, we cannot read various words or phrases in isolation but must read them in context, and in a manner that gives effect to the entire statute.” Thermo Dev., Inc. v. Cent. Masonry Corp., 195 P.3d 1166, 1168 (Colo. App. 2008).
¶ 11     Instead, reading section 14-10-114 as a whole illustrates in three ways that the General Assembly never intended the guideline formula to restrict the court’s maintenance determination. First, the statute twice calls the guidelines “advisory”:
 “Courts and litigants would benefit from the establishment of a more detailed statutory framework that includes advisory guidelines to be considered as a starting point for the determination of fair and equitable maintenance awards.” § 14-10-114(1)(b)(II) (emphasis added).
 “Therefore, the general assembly declares that it is appropriate to create a statutory framework for the determination of maintenance awards, including advisory guidelines for the amount and term of maintenance in certain cases . . . .” § 14-10-114(1)(c) (emphasis added).
¶ 12     Second, section 14-10-114(3)(e) clarifies that awarding maintenance in the guideline amount is not mandatory: “The maintenance guidelines set forth in paragraph (b) of this subsection (3) do not create a presumptive amount or term of maintenance.” (Emphasis added.) To the contrary, the statute describes the guideline formula as “a starting point,” not the ending point, for a maintenance determination. See § 14-10-114(1)(b)(II).
¶ 13     Third, the statute requires the district court to consider at least twelve other factors after applying the guideline formula but before awarding maintenance. And a number of those factors are financial: the parties’ financial resources, including the actual or potential income from separate or marital property or any other source; the ability of the recipient spouse to meet his or her needs independently; the ability of the payor spouse to meet his or her reasonable needs while paying maintenance; the distribution of marital property, including whether additional marital property may be awarded to reduce or alleviate the need for maintenance; both parties’ incomes, employment, and employability, as well as whether one party has historically earned higher or lower income than the income reflected at the time of permanent orders; the amount and duration of any temporary maintenance paid; and significant economic or noneconomic contribution to the marriage. § 14-10-114(3)(c)(I), (II), (IV), (V), (VI), (VIII), (X).
¶ 14     In our view, by describing the guideline formula as “advisory” and not presumptive, and by requiring the district court to consider other financial factors before awarding maintenance, the General Assembly indicated that it did not intend to “cap” the amount of maintenance available to a spouse. Moreover, reading the whole statute illustrates the General Assembly’s intention for the district court to retain broad discretion to “determine the award of maintenance that is fair and equitable to both parties based upon the totality of the circumstances.” § 14-10-114(3)(e).
¶ 15     For these reasons, we conclude that under the new maintenance statute, the district court must consider the guideline formula and make findings concerning the relevant factors cited in the statute. But after it has done so, the court, in its discretion, may award maintenance that exceeds the guideline formula amount if circumstances warrant it. See id.
II. Wife’s Appeal
¶ 16     Wife contends that the district court misclassified the South Magnolia Way home as marital property and thus erred in including it as part of the marital estate. She argues that her interest in the home was separate property by virtue of circumstances that created a resulting trust. Alternatively, she argues that the home was a separate gift, and that the court should have divided only the marital increase in value. We reject the first argument, but we remand for the district court to reconsider the second argument.
A. Appellate Standard of Review
¶ 17      The classification of property as a marital asset or a separate asset is a conclusion of law that is based on the court’s findings of fact. In re Marriage of Corak, 2014 COA 147, ¶ 9. Although we defer to the district court’s factual findings, we review de novo the legal standard the court applied. In re Marriage of Krejci, 2013 COA 6, ¶ 3.
B. Law
¶ 18     Property acquired during the marriage is presumed to be marital property absent clear and convincing evidence to the contrary. See § 14-10-113(3), C.R.S. 2015; In re Marriage of Balanson, 25 P.3d 28, 37 (Colo. 2001). Where a spouse takes title to property under circumstances that give rise to a resulting trust, that property has not been “acquired” for purposes of section 14-10-113(3). Therefore, the trust property is not part of the marital estate. In re Marriage of Martinez, 77 P.3d 827, 829 (Colo. App. 2003).
¶ 19     “A resulting trust is a trust implied by law when the circumstances surrounding the transfer of property raise the inference that the parties intended to create a trust.” Mancuso v. United Bank of Pueblo, 818 P.2d 732, 738-39 (Colo. 1991). Such a trust arises when a person disposes of property under circumstances in which it can be inferred that the transferor did not intend to convey a beneficial interest in the property to the transferee. Bryant v. Cmty. Choice Credit Union, 160 P.3d 266, 271 (Colo. App. 2007).
¶ 20     Determining whether a resulting trust exists is a matter for the fact finder. Mancuso, 818 P.2d at 740.
C. Resulting Trust
¶ 21     Wife’s mother (mother) lived in the South Magnolia Way home throughout the parties’ marriage. A last will and testament prepared by mother in 1977 provided for her real property to be held in trust and “used in the manner that is most beneficial to my children.” Wife testified at the permanent orders hearing that mother’s intent in executing the will was to provide her children with equal shares of her property.
¶ 22     In 2000, mother quitclaimed all of her interest in the home to wife. Wife testified at the hearing that the 2000 deed was either never recorded or improperly recorded. So, in 2005, mother recorded a corrected quitclaim deed that listed herself and wife as joint tenants. When mother died in 2014, the home passed to wife.
¶ 23     At the permanent orders hearing, wife testified that mother executed the 2005 quitclaim deed because she learned in or around 2005 that she was nearing the end of her life. Wife also testified that the 2005 quitclaim deed was an estate planning measure to keep the home out of probate, and that “mother’s will was absolutely clear that all of her property . . . [was to be split] between the siblings.” Wife argued to the district court that in executing the 2005 quitclaim deed, mother intended for wife to hold the home in trust for the siblings but did not intend for wife to obtain any beneficial interest in the home.
¶ 24     The district court rejected the argument that mother intended for all of her children to share equally in the South Magnolia Way home. It explained that had mother’s intent been to share her property with all of her children, she “could . . . have made all of her children joint tenants.” Instead, the court found that wife acquired the home during the marriage and, therefore, it constituted marital property subject to equitable division. Then the court awarded the home to wife as part of her share of the marital estate.
¶ 25     We decline to disturb this classification because evidence supports it. The district court could reasonably have found that any inference of a resulting trust was rebutted by evidence that mother intended wife to have a beneficial interest in the home upon her death.
¶ 26     As the record shows, mother twice quitclaimed her interest in the home to wife. Neither deed listed any of mother’s other children as grantees or joint tenants, a fact which the district court deemed “important” in ascertaining the intent behind the transfer. Further, when mother executed the 2000 deed, she had not yet learned that she was nearing the end of her life. Thus, the court could have inferred from this evidence that the transfer to wife was not merely intended as an estate planning measure. See Fid. Nat’l Title Co. v. First Am. Title Ins. Co., 2013 COA 80, ¶ 13 (the inferences and conclusions to be drawn from the evidence are within the province of the district court).
¶ 27     Other evidence also supports the district court’s conclusion that mother intended wife to be the beneficial owner of the home after her death. Specifically, wife testified that she alone cared for her mother and that her siblings “were not there” for their mother “all this time” while mother was nearing the end of her life.
¶ 28     These circumstances are sufficient to support the district court’s conclusion that no resulting trust formed and that mother intended for wife to take a beneficial interest in the home. We therefore may not overturn the district court’s decision. See Mancuso, 818 P.2d at 740.
¶ 29     Although wife urges us to view Mancuso and Martinez as favorable to her position, those cases are distinguishable.
¶ 30     In Martinez, although the wife took title to her sister’s home and refinanced it on the sister’s behalf, the sister resided in and paid all expenses associated with the property. 77 P.3d at 828. The wife disclaimed any beneficial ownership in the house, and “[n]othing in the record” revealed that the wife received any beneficial ownership interest. Id. Unlike in Martinez, here, mother and wife owned the home in joint tenancy. And as explained above, the evidence supports the district court’s conclusion that mother wanted wife to have a beneficial interest in the home. See id. at 829.
¶ 31     In Mancuso, the mother opened a joint bank account with express directions that the account remain her property and that her son be allowed to access it only on her behalf. 818 P.2d at 739-40. No similar facts exist here that expressly limited wife’s interest in the home.
¶ 32     Accordingly, these cases do not persuade us to overturn the district court’s conclusion that no resulting trust arose.
D. Gift
¶ 33     Alternatively, wife argues that if no resulting trust arose, the transfer of title was a separate gift from mother and that only the marital increase in value is subject to equitable division. The district court’s findings are insufficient for us to resolve this argument.
¶ 34     The marital presumption can be overcome by showing that the property was acquired by gift. § 14-10-113(2)(a); In re Marriage of Dale, 87 P.3d 219, 227 (Colo. App. 2003). To qualify as a “gift,” a transfer of property must involve a simultaneous intention to make a gift, delivery of the gift, and acceptance of the gift. Balanson, 25 P.3d at 37. That determination hinges fundamentally on the intent and acts of the donor and recipient, which, in turn, are questions of fact for the district court to resolve. Dale, 87 P.3d at 227.
¶ 35     Wife argued at the permanent orders hearing that the home was a gift of separate property and that only the marital increase in value from 2005 should be divided. Husband responded that mother gifted the home to the marriage. But he asserted that if the court characterized the home as wife’s separate property, it should divide the increase in value from the date of the original 2000 quitclaim deed. Although the transcript reflects lengthy discussions between counsel and the district court on this issue, the court did not make any factual findings resolving whether or when mother gifted the home to wife.
¶ 36     Accordingly, we cannot determine whether wife successfully rebutted the marital presumption. See § 14-10-113(2)(a).
¶ 37     We therefore remand this issue for reconsideration, directing the district court to make specific findings, by clear and convincing evidence, whether the home was a gift to the marriage or wife’s separate property. If the court reaches the latter conclusion, it must then determine when mother gifted the property to wife (2000 or 2005) and calculate the resulting marital increase in value. See § 14-10-113(4) (increase in the value of gift property during the marriage is marital property).
¶ 38     If any new division impacts the fairness of the overall property and debt division, on remand, the court may revisit its entire property and debt division, but it need do so only if reconsideration is necessary to achieve an equitable result. See Corak, ¶ 31.
E. Iowa Avenue Home
¶ 39     The parties owned a home on East Iowa Avenue. Husband asked the court to award him the East Iowa home, which the court did. Wife asserts in the conclusion section of her opening brief that the district court erred in awarding this asset to husband. We will not consider this contention, which is both perfunctorily asserted and unsupported by any legal argument. See Holley v. Huang, 284 P.3d 81, 87 (Colo. App. 2011) (declining to address bald assertions of error that lack any meaningful explanation); Castillo v. Koppes-Conway, 148 P.3d 289, 291 (Colo. App. 2006) (declining to consider contention not fully briefed or supported with pertinent authority).
III. Conclusion
¶ 40 That portion of the judgment dividing the South Magnolia Way home is vacated and remanded for the court to reconsider the classification of the property and, accordingly, to reconsider property division and maintenance. In all other respects, the judgment is affirmed.
JUDGE WEBB and JUDGE J. JONES concur.