In re the **MARRIAGE OF Marta Doris CARDONA, Appellee,**

and

**Jaime Felipe CASTRO, Appellant.**

No. 09CA1996.

Colorado Court of Appeals, Div. III.

Dec. 9, 2010.

---

Antolinez Miller, L.L.C., Joseph H. Antolinez, Melissa E. Miller, Littleton, Colorado, for Appellee.

Karin Johnson Chatfield, L.L.C., Karin Johnson Chatfield, Denver, Colorado, for Appellant.

Opinion by Judge J. JONES.

Jaime Felipe Castro (husband) appeals from the permanent orders entered in conjunction with his legal separation from Marta Doris Cardona (wife). We affirm in part, reverse in part, and remand for further proceedings.

## I. Property Distribution

Pursuant to section 14–10–113(1), C.R.S.2010, a trial court divides marital property, without regard to marital misconduct, in such proportions as it deems just, considering the factors listed in the statute. A trial court has great latitude to effect an equitable distribution based upon the facts and circumstances of each case, and we will not disturb the court's decision unless there has been a showing of a clear abuse of discretion. *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001).

When dividing marital property, the trial court must first set apart separate property to each spouse. § 14–10–113(1); *In re Marriage of Rodrick*, 176 P.3d 806, 814 (Colo.App.2007). The classification of property as marital or separate is a legal determination that is dependent on the resolution of factual disputes. *In re Marriage of Williamson*, 205 P.3d 538, 540 (Colo.App.2009). Thus, we defer to the trial court's factual findings, absent a showing of an abuse of discretion, and independently review its resolutions of questions of law. *See id.*

### A. The Marital Home

Husband contends that the trial court abused its discretion by setting aside to wife $80,000 of the proceeds from sale of the marital home as reimbursement for her contribution of separate property toward purchasing the home. We agree.

Marital property does not include property that a party acquired prior to the marriage. *See* § 14–10–113(2), C.R.S.2010; *In re Marriage of Stedman*, 632 P.2d 1048, 1050 (Colo.App.1981). Premarital property that is placed in joint tenancy by a spouse during the marriage, however, reflects an intent by the donor spouse to make a gift to the marriage, and such property is presumed to be marital absent clear and convincing evidence to the contrary. *In re Marriage of Balanson*, 25 P.3d at 37; *see also In re Marriage of Moncrief*, 36 Colo.App. 140, 141–42, 535 P.2d 1137, 1138 (1975).

Here, the trial court awarded wife the first $80,000 in proceeds from the sale of the marital home as her separate property and then divided the remainder of the proceeds between the parties as marital property. Wife testified that during the marriage she sold a condominium that she had purchased before marriage and placed the $100,000 proceeds from that sale into a joint account with husband, and that the funds were then used to purchase the marital home and for landscaping on the home. Wife further testified that the condominium had increased in value about $60,000 during the marriage and before sale. Wife did not present evidence that the parties intended for the proceeds from the sale to remain her separate property. Although, as wife notes, the record is not complete, she indicates that it is only part of husband's testimony, and not hers, that is missing. Additionally, the trial court made

no findings explaining why the funds remained separate even though wife placed them in joint tenancy.

Accordingly, on remand the trial court must reconsider the division of the marital home. Although in making an equitable division of this asset, the court may consider wife's contribution of her separate property, it may not set aside her contribution as separate property without further findings explaining why the presumption that wife intended to make a gift to the marriage does not apply. Additionally, the court should consider the marital increase in value of wife's separate property before she sold it. *See In re Marriage of Burford,* 26 P.3d 550, 555 (Colo.App.2001) ("[A]n asset acquired prior to the marriage shall be considered as marital property to the extent that its present value exceeds its value at the time of the marriage.").

Reconsideration of this asset will require the trial court to reexamine the entire property division. *See In re Marriage of McCadam,* 910 P.2d 98, 100 (Colo.App.1995). The court should reconsider the property division based on the parties' economic circumstances existing on remand. *See In re Marriage of Wells,* 850 P.2d 694, 697 (Colo.1993); *In re Marriage of Powell,* 220 P.3d 952, 961 (Colo. App.2009).

Although we have remanded for reconsideration of the property division, we address other property issues raised by husband to the extent they may arise again on remand. *See In re Marriage of Simon,* 856 P.2d 47, 51 (Colo.App.1993).

### B. Husband's Separate Property

■ Husband further contends that the trial court abused its discretion in valuing the marital portion of his separate property by considering not only the increase in value of the property during the marriage, but also the amount of marital funds that were used to pay down the mortgage. We disagree.

■ When a spouse uses marital income to pay down the debt on separate property, thereby increasing its equity, the increased equity is equitably divided in the marital property division. *See In re Marriage of*

*Burford,* 26 P.3d at 558–59. We reject husband's contention that *In re Marriage of Burford* applies only when separate property has *not* increased in value. Rather, the amount of equity in husband's separate property is not only a function of its increase in value during the marriage, but also of husband's use of marital funds to pay down the debt. Thus, the trial court did not abuse its discretion in considering both factors when determining the marital portion of the property.

■ We are not persuaded otherwise by husband's contention that the decrease in debt should not have been considered because he used rental income from the property to pay down the mortgage. Income earned from separate property during the marriage is marital property. *See id.* at 558. Thus, the rental income that husband used to pay down the mortgage was marital income, and the trial court did not abuse its discretion by considering the mortgage reduction.

■ We are also not persuaded otherwise by husband's contention that the trial court's treatment of the parties' separate property was ·inequitable because the mortgage on wife's separate property was also paid during the marriage. Husband does not cite to a portion of the record where he raised this contention in the trial court, and our review of the record indicates that he did not argue at the hearing that the court should consider that wife's mortgage was reduced using marital funds. Accordingly, we will not consider that contention on appeal. *See In re Marriage of Atencio,* 47 P.3d 718, 722 (Colo.App. 2002) (declining to consider contention not raised first in the trial court).

### C. Husband's Vacation and Sick Leave Time

■ Husband further contends that the trial court erred by dividing the value of his accrued vacation and sick leave time as part of the marital estate. We agree.

Husband testified that he had accrued vacation and sick leave at his employment and that he would be paid for the unused time only if and when he left his job. He further testified that he accumulated the time, in

part, because he anticipated needing it in the future to exercise his parenting time. The trial court awarded the leave time, which was valued at $23,232, to husband, but required him to pay wife $11,616 for her share of the asset.

We review de novo the legal question whether husband's accrued leave time is a marital asset that is divisible on dissolution. *See In re Marriage of Williamson*, 205 P.3d at 540 (division reviewed de novo whether spouse's military disability pay was divisible as a marital asset).

The question presents an issue of first impression in Colorado. Courts in other jurisdictions are split on the issue. *Compare In re Marriage of Abrell*, 236 Ill.2d 249, 337 Ill.Dec. 940, 923 N.E.2d 791, 801 (2010) ("[W]e find that accrued vacation and sick days are not marital property subject to distribution in a dissolution of marriage action."); *Akers v. Akers*, 729 N.E.2d 1029, 1032–33 (Ind.Ct.App.2000) (reversing trial court's treatment of unused sick days as a marital asset); *Bratcher v. Bratcher*, 26 S.W.3d 797, 801 (Ky.Ct.App.2000) ("[W]e hold that accrued holiday and vacation entitlement is not marital property."); *and Thomasian v. Thomasian*, 79 Md.App. 188, 556 A.2d 675, 681 (1989) (same), *with Schober v. Schober*, 692 P.2d 267, 268 (Alaska 1984) (holding that unused leave, a portion of which was convertible to cash on a yearly basis, was a marital asset); *Dye v. Dye*, 17 So.3d 1278, 1281 (Fla.Dist.Ct.App.2009) ("[T]he cash value of unused sick leave and vacation time is a marital asset subject to equitable distribution."); *Lesko v. Lesko*, 184 Mich.App. 395, 457 N.W.2d 695, 699 (1990) (holding that banked leave days were a divisible marital asset), *disagreed with on other grounds by Booth v. Booth*, 194 Mich.App. 284, 486 N.W.2d 116 (1992); *and In re Marriage of Williams*, 84 Wash.App. 263, 927 P.2d 679, 683 (1996) (same).

██ In Colorado, "enforceable contractual rights constitute property, [while] interests that are merely speculative are mere expectancies." *In re Marriage of Balanson*, 25 P.3d at 35. Accordingly, for example, employee stock options constitute property for purposes of dissolution proceedings only when the employee has a vested and enforceable right to them, even if that right is not presently exercisable. *See id.* at 39–40; *see also In re Marriage of Balanson*, 107 P.3d 1037, 1045 (Colo.App.2004) (property right is vested, or is more than a mere expectancy, when there is legal or equitable title to the present or future enjoyment of the property). Similarly, an interest in an irrevocable trust is marital property divisible on dissolution, but an interest in a discretionary or revocable trust is not. *See In re Marriage of Balanson*, 25 P.3d at 41; *In re Marriage of Balanson*, 107 P.3d at 1047; *In re Marriage of Dale*, 87 P.3d 219, 222 (Colo.App.2003). Although an interest in an irrevocable trust may present only a right to future enjoyment and may be subject to divestment, these factors render only the value of the interest uncertain. The interest itself is still fixed subject only to the condition of survivorship and is thus a property right and not a mere expectancy. *See In re Marriage of Balanson*, 25 P.3d at 41; *In re Marriage of Dale*, 87 P.3d at 222.

Analogizing to these authorities, we conclude husband's accumulated unused leave time is more akin to an employee's unvested stock options or an interest in a discretionary trust, and is thus not property subject to distribution on dissolution. It is not just the value of the unused leave time, which is calculated based on husband's salary, that is uncertain, but the very existence of the time. If husband becomes seriously ill, he may have to use all his accrued time. Thus, husband's right to be paid for the accrued time is not vested, but rather is uncertain and could disappear completely. As stated recently by the Illinois Supreme Court:

> [The husband] had no present right to be paid for his sick and vacation days absent retirement or termination of his employment. Further, while [he] had accrued 115 sick days and 42 vacation days at the time of trial, those days may or may not remain at the time [he] retires or terminates his employment. If [he] uses any of the sick or vacation days awarded to him prior to retirement or termination of his employment, [he] will never collect payment for those days. In that case, the award of the

value of those days to [him] in the property distribution would be illusory. As [he] has argued, if this court reinstates the trial court's finding that the accumulated vacation and sick days are marital property, [his] share of the marital estate will be diminished every time he uses a sick day or vacation day before his retirement or termination, while [the wife's] cash payout will remain the same. Consequently, we find that although [the husband] accumulated his vacation and sick days during his marriage to [the wife], the accumulation of those days had only a future value that was indeterminate and speculative. For that reason, we find that the accrued vacation and sick days differ from pension plans, stock options and deferred compensation.

*In re Marriage of Abrell,* 337 Ill.Dec. 940, 923 N.E.2d at 800.

The Maryland court in *Thomasian* similarly distinguished accrued leave time from other types of deferred compensation, which are considered marital property:

> We just are not persuaded that accrued holiday and vacation entitlement is the same as a pension or retirement benefits, a form of deferred compensation; since it replaces wages on days when the worker does not work, it is really only an alternative form of wages. It need not be liquidated by the payment of cash; it may be, and often is, dissipated when the person entitled to do so, takes vacation or holiday time. Thus, it is far from as tangible as, and much more difficult to value, not to mention more personal than, a pension or retirement benefits.

*Thomasian,* 556 A.2d at 681 (citation omitted); *accord Bratcher,* 26 S.W.3d at 800–01; *but see Arnold v. Arnold,* 134 N.M. 381, 77 P.3d 285, 288–90 (Ct.App.2003) (equating an employee's accrued leave time with unvested stock options and similar employee benefits); *Grund v. Grund,* 151 Misc.2d 852, 573 N.Y.S.2d 840, 844 (N.Y.Sup.Ct.1991) (analogizing the contingent nature of unused leave to unvested pension benefits).

We are not persuaded otherwise by cases from other jurisdictions in which the distribution of the value of a spouse's accrued leave was deferred until the spouse retired and became entitled to payment for the leave. *See Arnold,* 77 P.3d at 290 (upholding trial court's valuation of unused leave but deferring payment until retirement); *Grund,* 573 N.Y.S.2d at 844 (holding that because entitled spouse could suffer a catastrophic illness and use up his accumulated leave, a lump sum award for the leave would be inappropriate, and instead awarding a percentage of whatever leave remains at retirement). We recognize that a deferred compensation or reserve jurisdiction method may be used to value a spouse's retirement benefits on dissolution. *See In re Marriage of Hunt,* 909 P.2d 525, 530–31 (Colo.1995). As the New York court recognized, however, this type of distribution of accrued leave time unavoidably creates an incentive for the spouse accumulating the leave to use it all so that the other spouse will receive nothing. *Grund,* 573 N.Y.S.2d at 844.

Here, wife and the child were relocating to Florida, and husband testified that he had banked vacation time, in part, in anticipation of needing it to exercise parenting time. Under these circumstances, not only would it be undesirable to create an incentive for husband not to accumulate leave time, it would also be particularly speculative to award wife the value of the leave time at dissolution when husband had specific plans to use it in order to exercise parenting time with the parties' child. Accordingly, we reject a delayed distribution approach with regard to husband's accrued leave time, and instead conclude that due to the uncertain nature of this benefit, the better-reasoned approach is not to treat a spouse's accrued leave time as marital property on dissolution. *See In re Marriage of Abrell,* 337 Ill.Dec. 940, 923 N.E.2d at 800 (rejecting the *Grund* reserve jurisdiction approach because it "could be unnecessarily complicated and difficult to administer, particularly if the parties are many years from retirement"). On remand, the trial court should reconsider the marital property division without considering husband's accrued vacation and sick time.[1]

**1.** We acknowledge that this issue is a difficult one. In light of the differing opinions on the

## D. Wife's Vehicle

Husband further contends that the trial court's valuation of wife's vehicle was not supported by the evidence. We agree that further findings are necessary as to this asset.

In dividing marital property, the court must determine the approximate current value of the property owned by the parties. *In re Marriage of Zappanti*, 80 P.3d 889, 892 (Colo.App.2003). A value determination is within the trial court's discretion, and we will not disturb it if reasonable in light of the evidence as a whole. *In re Marriage of Nevarez*, 170 P.3d 808, 812 (Colo.App.2007). The court may select the valuation of one party over that of the other party or determine its own reasonable value, and we will uphold its decision unless it is shown to be clearly erroneous. *Id.* "A trial court's order must contain findings of fact and conclusions of law sufficiently explicit to give an appellate court a clear understanding of the basis of its order and to enable the appellate court to determine the grounds upon which it rendered its decision." *In re Marriage of Rozzi*, 190 P.3d 815, 822 (Colo. App.2008).

Here, the trial court valued wife's vehicle at $5,500. Husband testified that he believed the vehicle was worth $20,000 and that the parties owed about $8,000 on it. Wife testified that the vehicle was worth $11,000 to $12,000, but did not indicate what the parties owed on the vehicle at the time of the hearing. Although the court could determine its own reasonable value for the vehicle, the court made no findings here explaining the basis for the $5,500 value. Thus, on remand, the court should make more specific findings sufficient to give this court a clear understanding of the basis of its order. *See id.*

## II. Maintenance

Because the issues of property division and maintenance are inextricably interwoven, the trial court must reconsider maintenance in conjunction with its review of the property distribution on remand. *See In re Marriage of Nevarez*, 170 P.3d at 815. We decline to reach husband's contentions regarding the maintenance award because they are moot, at least in part, due to our remand of the property division. Husband may raise his concerns about the maintenance award in the trial court on remand.

## III. Child Support

Because we are remanding for a redetermination of property division and maintenance, we also remand for a redetermination of child support. *See* § 14–10–115(5)(a)(I), (Y), C.R.S.2010 (providing that maintenance received is includable in gross income for purposes of applying the child support guidelines). But because the issues husband raises with respect to child support are unaffected by our conclusions as to the other issues husband raises on appeal, and are unlikely to be affected directly by the redeterminations of property division and maintenance on remand, we will address them.

We review child support orders for abuse of discretion because the issue of the parents' financial resources is factual in nature. *In re Marriage of Atencio*, 47 P.3d at 720. We review de novo, however, whether the trial court applied the correct legal standard in determining child support. *Id.*

### A. Husband's Income

Husband contends that the trial court erred in calculating his income for child support purposes. We disagree.

Child support obligations are determined by applying the statutory guideline in section 14–10–115(7), C.R.S.2010, to the combined adjusted gross incomes of the parents. *See In re Marriage of Nimmo*, 891 P.2d 1002, 1005 (Colo.1995). "Gross income" includes income from any source. § 14–10–115(5)(a)(I), C.R.S.2010; *In re Marriage of Nimmo*, 891 P.2d at 1005. A parent's actual gross income is adjusted for child support purposes by deducting "preexisting child support obligations and . . . alimony or main-

issue among the members of this division and courts in other jurisdictions, the issue strikes us

as one particularly suitable for legislative action.

tenance actually paid by a parent." § 14–10–115(3)(a), C.R.S.2010; *see In re Marriage of Nimmo,* 891 P.2d at 1005. The determination of a parent's gross income for child support purposes is not controlled by definitions of gross income used for federal or state income tax purposes. *In re Marriage of Mugge,* 66 P.3d 207, 210 (Colo.App.2003).

Here, the trial court used husband's actual gross income to calculate child support without deducting the amount he pays into his employer's cafeteria plan to pay for the children's day care and health insurance. We reject husband's argument that this was error. The child support statute does not exclude such amounts, which are part of husband's wages that he elects to set aside for a particular purpose, from his gross income. Husband cites no authority, and we are not aware of any, that would exclude these amounts from a parent's income for child support purposes. To the contrary, the child support statute defines income very broadly to include sources beyond those specifically listed in the statute. *See In re A.M.D.,* 78 P.3d 741, 743–44 (Colo.2003).

Thus, we perceive no error by the trial court in calculating child support using husband's gross income. Contrary to husband's argument, the court did not ignore his contribution to the children's day care. Rather, the court properly allocated this expense according to the parties' incomes, as provided by section 14–10–115(9)(a), C.R.S.2010.

## B. Travel Expenses

 Husband further contends that the trial court erred in refusing to award him his travel expenses for exercising parenting time. We disagree.

First, husband provides no legal basis for an award of his travel expenses. While the child support statute provides that the cost of transporting a child, or a child *and* a parent if the child is under twelve years of age, between the homes of the parents shall be divided in proportion to income, there is no such provision relating to a parent's expenses. *See* § 14–10–115(11)(a)(II), C.R.S. 2010.

 Additionally, husband has not provided a complete record of the evidence presented in the trial court. It is the appellant's responsibility to designate the record on appeal, including such parts of the trial proceedings as are necessary for purposes of the contentions on appeal. *People v. Wells,* 776 P.2d 386, 390 (Colo.1989); *In re Marriage of Tagen,* 62 P.3d 1092, 1096 (Colo.App. 2002). If parts of the trial court proceedings that were not recorded are necessary to determination of the appeal, the provisions of C.A.R. 10(c) must be followed. *In re Marriage of McSoud,* 131 P.3d 1208, 1211 (Colo. App.2006). We assume that material portions omitted from the record would support the trial court's judgment. *See Wells,* 776 P.2d at 390; *In re Marriage of Tagen,* 62 P.3d at 1096.

Here, the final day of testimony was apparently not recorded and husband has not followed the procedure in C.A.R. 10(c) to reconstruct the record. Accordingly, we are unable to review his contention that "there was no evidence presented whatsoever" that travel expenses were paid by his employer, and we must assume that the missing record would support the court's order.

## C. Dependency Exemption

 Husband contends that the trial court erred by allocating the dependency tax exemption for the children inconsistently with its previous order and contrary to section 14–10–115(12), C.R.S.2010. We agree, and remand for reallocation of the exemption in accordance with the statute.

Pursuant to section 14–10–115(12), a trial court must divide the dependency tax exemption between the parties in proportion to their contributions to the costs of raising the child, which means according to the percentage of income attributed to each parent for child support purposes. *See S.F.E. in Interest of T.I.E.,* 981 P.2d 642, 648 (Colo.App. 1998).

Here, at husband's request, the trial court entered an order before the hearing allocating the dependency exemption to him for both children in even numbered years and for one child in odd numbered years. The order does not indicate that it is intended to

be temporary only pending permanent orders. At permanent orders, however, the court reallocated the exemption, without explanation, so that each party may claim one child every year. The percentage of income attributed to husband on the child support worksheet, however, was sixty-five percent, as compared with wife's thirty-five percent.

We acknowledge that the trial court is free to revise an interlocutory order on final orders. *See Pearson v. Dist. Court,* 924 P.2d 512, 515 (Colo.1996) (recognizing that a court has the power to reconsider and reverse a decision). The court made no findings, however, to indicate its reason for revising its earlier order, and its final allocation of the exemption does not comport with the statute. Accordingly, on remand, the court should reallocate the dependency exemption in accordance with section 14–10–115(12).

## IV. Attorney Fees

Husband further contends that the trial court abused its discretion by awarding wife $10,000 in attorney fees as a sanction against him for nondisclosure. We agree.

C.R.C.P. 16.2(j) permits the trial court to impose appropriate sanctions if a party fails to comply with any provision of C.R.C.P. 16.2. "Considerable discretion is vested in the trial court to determine whether noncompliance with mandatory pretrial procedures justifies the imposition of sanctions against the noncomplying party." *People v. Milton,* 732 P.2d 1199, 1207 (Colo.1987) (construing former C.R.C.P. 121); *see also In re Marriage of Emerson,* 77 P.3d 923, 927 (Colo.App.2003) (trial court has broad discretion to award sanctions for discovery violations). Thus, absent a showing of an abuse of discretion, we will not disturb the trial court's decision on such a matter. *See Milton,* 732 P.2d at 1207; *In re Marriage of Emerson,* 77 P.3d at 927.

Here, the trial court awarded wife attorney fees under C.R.C.P. 16.2 and 37. We reject wife's contention that fees were also awarded under section 14–10–119, C.R.S.2010. Although the court cited this statute in an introductory paragraph of its order, it did not cite the statute as a basis for the attorney fees award, and it made no accompanying findings concerning the relative financial circumstances of the parties to support an award under section 14–10–119.

The court found that sanctions in the form of attorney fees were appropriate because of husband's "substantial lack of disclosure throughout this case." The trial court record does not support this finding, however. During the pendency of the case, between the time that husband filed his certificate of compliance with C.R.C.P. 16.2(e) mandatory disclosures and the permanent orders hearing, wife filed one motion to compel relating to discovery or disclosure issues. That motion was granted and wife was contemporaneously awarded the attorney fees she sought. Wife filed no other motions relating to nondisclosure. Although wife's attorney noted at the beginning of the hearing that husband's counsel did not cooperate in filing a joint trial management certificate, the record reflects that the parties filed separate certificates right before the hearing. Wife indicated in her certificate the difficulties in conferring with husband. She did not request sanctions or fees, however.

Accordingly, because the trial court's basis for sanctioning husband is not supported by the record, the resulting award of attorney fees to wife cannot stand.

We do not view husband's appeal as lacking substantial justification. Thus, we deny wife's request for attorney fees incurred on appeal under section 13–17–101, C.R.S.2010.

The portions of the judgment allocating the dependency tax exemption for the children, dividing the marital property, awarding maintenance, awarding child support, and assessing attorney fees as a sanction against husband are reversed. The case is remanded for further proceedings on the issues of property division, maintenance, and, to the extent affected by any changes in maintenance, child support, including the dependency exemption, as provided herein. In all other respects, the judgment is affirmed.

Judge LICHTENSTEIN concurs.

Judge DAILEY concurs in part and dissents in part.

Judge DAILEY concurring in part and dissenting in part.

I concur in all but part I(C) of the majority's opinion. Initially, I acknowledge that the issue of how to treat unused sick and vacation time in a dissolution action is a very difficult one to resolve. *See Lesko v. Lesko,* 184 Mich.App. 395, 457 N.W.2d 695, 699 (1990) ("On the one hand, [the husband] may become ill and not retain his sick days until retirement. On the other hand, he has accumulated these sick days and vacation days during the marriage, he has a right to the use or pay for these days and they are capable of being assigned a value."), *disagreed with on other grounds by Booth v. Booth,* 194 Mich.App. 284, 486 N.W.2d 116 (1992).

Nonetheless, like the trial court, I would hold that an employee's vacation and sick time accrued during the course of a marriage is a marital asset subject to division in a dissolution of marriage case.

The majority aptly notes the split of authority in other jurisdictions regarding this issue and finds persuasive those cases holding an employee's accrued interest in sick and vacation time not to be a marital asset. The majority reaches this conclusion based on "the uncertain nature of this [sick and vacation leave] benefit." The majority characterizes the benefit as having an "uncertain nature" due to (1) the possibility that husband may have to use all his accrued time in the event of a serious illness, and (2) husband's present plan to use accrued leave time for exercising parenting time with the parties' child.

I disagree that an accrued leave benefit is too speculative to be treated as a marital asset. As the majority acknowledges, in Colorado, we have recognized, as property rights subject to division in a dissolution action, analogous interests involving a right to future enjoyment but subject to divestment and even uncertain value. *See, e.g., In re Marriage of Balanson,* 25 P.3d 28, 40 (Colo.2001) (interest in an irrevocable trust).

Further,

[t]he essence of leave is that it is a benefit of employment and, whether considered a benefit in addition to salary, or somehow an aspect of salary, it has independent value. If taken during marriage, leave time devoted to vacation or to recovery from illness benefits the community. If not taken, leave that accumulates will be available to benefit the community in the future. If the community ends, the accumulated leave attaches to the employee. Unless some equitable distribution is made or the asset is divided upon dissolution of marriage, the employee takes the full community asset and benefit. We see no policy reason or persuasive rationale why the employee, Husband in the case before us, should end up with the full value of the community asset or why the leave assets should not be divided.

*Arnold v. Arnold,* 134 N.M. 381, 77 P.3d 285, 290 (Ct.App.2003).

Finally, the nature of an accrued leave benefit is not too speculative to be valued. An accrued leave benefit may rationally be valued based on the employee's present salary; the possibility that its value could increase or decrease after it is awarded is of no moment. *See In re Marriage of Abrell,* 236 Ill.2d 249, 337 Ill.Dec. 940, 923 N.E.2d 791, 805 (2010) (Garman, J., dissenting).

For these reasons, I perceive no error in the trial court's treatment of husband's accrued leave time as marital property.