24CA1502 Marriage of Bonnema 04-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1502
Jefferson County District Court No. 17DR1911
Honorable Jason Carrithers, Judge

---

In re the Marriage of

Katherine Nadette Bonnema,

Appellee,

and

Eric Jason Bonnema,

Appellant.

---

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE TOW
Dunn and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 24, 2025

---

No Appearance for Appellee

Eric Jason Bonnema, Pro Se

¶ 1    Eric Jason Bonnema (father) appeals the district court's order adopting a magistrate's ruling that modified his child support obligation. We reverse and remand with directions.

I.    Relevant Facts

¶ 2    In 2018, the district court dissolved father's marriage with Katherine Nadette Bonnema, now known as Katherine Nadette Sena (mother). In its permanent orders, the court equally allocated parenting time for their two children and ordered father to pay child support and maintenance.

¶ 3    After father's maintenance obligation terminated in 2023, mother filed a motion to modify his child support obligation. After a hearing, the magistrate granted the motion and increased father's child support obligation to $938 per month, which previously had been approximately $300 per month. In calculating this amount, the magistrate found that, based on their present employment, father earned $12,067 per month and mother earned $5,236 per month. The magistrate's calculation also included adjustments of $150 per month for mother's payment toward work-related child care costs and $170 per month for mother's payment toward

1

extraordinary medical expenses.  On review under C.R.M. 7(a), the district court adopted the magistrate's decision.

## II.     Standard of Review

¶ 4     When we review a district court's order adopting a magistrate's decision, we effectively act as a second layer of appellate review.  *In re Marriage of Thorburn*, 2022 COA 80, ¶ 25.  We accept the magistrate's factual findings unless they are clearly erroneous and review de novo the application of the law.  *Id.* at ¶¶ 25-26.

¶ 5     The decision to modify child support is within the magistrate's sound discretion.  *See In re Marriage of Bergeson-Flanders*, 2022 COA 18, ¶ 10.  We therefore will not disturb the magistrate's decision absent a showing that the decision is manifestly arbitrary, unfair, or unreasonable, or a misapplication of the law.  *Id.*

## III.    Extraordinary Medical Expenses

¶ 6     Father contends that the magistrate erred by including extraordinary medical expenses when determining the modified child support amount.  Although we reject father's contention that the children's therapy expenses should not be included at all, we agree the court erred by including the full cost of the children's therapy in the calculation.

¶ 7    The child support calculation begins with determining the basic support obligation based on the parents' combined gross incomes. *See* § 14-10-115(7)(a), (8)(a)-(b), C.R.S. 2024. Then, the figures are adjusted by adding extraordinary expenses that are predictable and recurring to the basic support obligation and allocating those expenses between the parents in proportion to their incomes. *In re Marriage of Alvis*, 2019 COA 97, ¶¶ 11, 13. One such adjustment is uninsured extraordinary medical expenses incurred on behalf of the children that exceed $250 per child per calendar year. § 14-10-115(10)(h)(I)-(II). "Extraordinary medical expenses include, but need not be limited to, such reasonable costs as are reasonably necessary for . . . professional counseling or psychiatric therapy for behavioral or mental health disorders." § 14-10-115(10)(h)(II). The adjustment for such costs excludes the first $250 per child per year because that amount is already accounted for in the basic support obligation. *Alvis*, ¶ 21.

¶ 8    Mother's proposed child support calculation included $170 per month for the children's extraordinary medical expenses. She explained that these expenses included the uninsured monthly costs for the children's therapy: $130 monthly for the older child,

whose therapist is not in the parties' insurance network; and two monthly in-network sessions for the younger child, for each of which mother pays a $20 copay. The magistrate included the full amount of these expenses when calculating child support.

¶ 9　　Father argues that the magistrate erred by including any amount related to the children's therapy sessions because the children do not have a behavioral or mental health disorder. *See* § 14-10-115(10)(h)(II). But while extraordinary medical expenses can include therapy for behavioral or mental health disorders, they are not "limited to" such expenses. *Id.* Mother testified that (1) the children needed therapy; (2) a parenting coordinator recommended therapy for them; and (3) she was regularly incurring uninsured expenses for these therapy sessions. This testimony supports the magistrate's treatment of the children's therapy costs as extraordinary medical expenses. And father directs us to no legal authority establishing that the magistrate abused his discretion by doing so. *See In re Marriage of Drexler*, 2013 COA 43, ¶ 27 (noting

the appellant's burden to provide us with legal authority to support an error contention).[1]

¶ 10    Still, father argues, even if the magistrate could allocate the children's therapy costs as extraordinary medical expenses, for two reasons, the magistrate erred by including $170 per month in his calculation.

¶ 11    First, he asserts that mother selected a therapist for the older child that was not covered by their health insurance, and he argues that it was unreasonable for the magistrate to include the full cost of those therapy sessions ($130 per visit) when "plenty of equivalent providers [were] available that would be covered by insurance." Mother testified that the older child had been attending sessions with the therapist for over five years, they had "a very long-standing relationship," and the child had "lots of trust in" that therapist. In light of this evidentiary support, we will not disturb the magistrate's implicit finding that these extraordinary medical expenses were reasonable. *See Thorburn*, ¶ 49 (recognizing that credibility

---

[1] Indeed, given the parties' post-dissolution relationship continues to be marked by extremely high conflict, it is in no way surprising that the children benefit from therapy.

determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn from the evidence, are matters within the magistrate's sole discretion).  Moreover, beyond father's conclusory claim that an out-of-network therapist is unreasonable, father directs us to nothing in the record to show that the costs for the older child's therapy sessions were unreasonable or any evidence of an alternative therapist covered by their health insurance that would sufficiently meet the older child's needs.

¶ 12     Second, father argues that $170 per month was the actual monthly cost mother paid for the children's therapy sessions, and, under the child support statute, the amount of extraordinary medical expenses does not include the first $250 spent per child per calendar year.  *See* § 14-10-115(10)(h)(II).  Here, we agree with father.  As noted, based on mother's testimony, the total monthly cost of the children's therapy is $170.  By including this full amount in the calculation, the magistrate failed to exclude the first $250 per child per year.  Appropriately adjusting the extraordinary medical expenses as the statute requires results in a child support

obligation of $909.78 per month instead of the $938 the court ordered.[2]

¶ 13     Because the district court erred by adopting the magistrate's inclusion of the entire cost of the children's therapy when calculating child support, we reverse the order and remand for correction of father's child support obligation.

IV.     Father's Work-Related Child Care Costs

¶ 14     Father next contends that the magistrate erred by not including his work-related child care costs when calculating child support. We are unpersuaded.

¶ 15     As with extraordinary medical expenses, the statute provides for an adjustment to the basic support obligation for the net child care costs a parent incurs due to their employment and allocates

---

[2] Specifically, instead of $170, the child support worksheet should reflect $128.33 on line 10.d., resulting in a total adjustment for mother of $293.33 instead of $335, as well as a modified total adjustment of $454.33 on line 11 of the worksheet. On line 12 of the worksheet, each parent's share of that total adjustment should reflect $137.48 for mother and $316.85 for father. Mother's adjustment for excess payment of her share (line 13) would change to $155.85, which results in an adjusted support obligation for mother (line 14) of $422. Offsetting this against father's obligation of $1,331.78 results in father owing mother $909.78 per month.

those costs between the parents in proportion to their incomes. § 14-10-115(9)(a).

¶ 16    Father reported paying $1,595 for his work-related child care costs in 2023. The magistrate declined to include these child care costs in its child support calculation because the magistrate found that father gave only a minimal explanation of his purported costs and his evidence was "not credible." The magistrate explained that father presented four handwritten receipts of varying amounts, did not present evidence to substantiate those receipts, and did not present sufficient evidence to establish that he incurred any child care costs due to his employment.

¶ 17    Father disagrees with the magistrate's findings and highlights evidence that he argues substantiated his reported child care costs. But we may not reweigh the magistrate's resolution of the conflicting evidence or set aside credibility determinations. *See In re Marriage of Evans*, 2021 COA 141, ¶ 45; *see also Thorburn*, ¶ 49.

¶ 18    Father also suggests that the magistrate held him to a different burden of proof because the magistrate accepted mother's child care costs without requiring her to present evidence substantiating her expenses. We disagree. The clear implication

8

from the magistrate's ruling is that he believed mother's testimony (and thus did not need substantial corroboration), while he did not believe father's testimony (and was unpersuaded by father's proffered corroboration). The mere fact that the magistrate found mother credible — but not father — does not mean the magistrate applied different burdens of proof. *See Thorburn*, ¶ 49.

¶ 19 The district court therefore properly adopted the magistrate's decision declining to include father's purported work-related child care costs in the child support calculation.

V. Mother's Net Work-Related Child Care Costs

¶ 20 Father also contends that the magistrate determined the incorrect amount of mother's work-related child care costs because the magistrate did not deduct the value of her federal income tax credit for child care. We discern no reversible error.

¶ 21 As noted, when adjusting the child support obligation for work-related child care costs, "[n]et child care costs" are included in the child support calculation. § 14-10-115(9)(a). Net child care costs are determined by subtracting the "value of the federal income tax credit for child care" from the actual costs. § 14-10-115(9)(b).

9

¶ 22    Mother testified that she paid $150 per month for her work-related child care costs.  Her worksheet, which the magistrate essentially adopted, reflects that full amount as an adjustment to the basic support obligation.  Thus, father appears to correctly point out that the child care expenses included in the calculation was not reduced by the amount of the federal tax credit.  However, we can find nothing in the evidence presented to the magistrate that references, let alone establishes, the amount of that credit.  (Indeed, we note that father's own proposed worksheet, which included his claimed credit for the child care expenses, did not reduce his request by the federal tax credit either.)  Because father did not provide the magistrate with the amount of the federal tax credit — or even argue that such a credit was relevant — he cannot now complain that the magistrate did not account for the credit in the calculation.

## VI.    Mother's Income

¶ 23    The magistrate found that mother earned $5,236 per month from her job as a teacher, and he used this income to determine child support.  Father argues that in addition to her wages in 2023, mother received $115,000 in gifts from her parents that included (1)

a $65,000 interest-free loan; (2) $32,000 in cash; and (3) a home lease that charged her below market value rent.  Father contends that the magistrate erred by not including these additional monetary and in-kind gifts in mother's gross income.  We disagree.

¶ 24    A parent's gross income for purposes of determining child support generally is the income a parent receives from any source, including monetary gifts.  § 14-10-115(5)(a)(I)(U).  Gross income may also include "[e]xpense reimbursements or in-kind payments received by a parent in the course of employment . . . or operation of a business if they are significant and reduce personal living expenses."  § 14-10-115(5)(a)(I)(X).

¶ 25    First, mother's father testified that the $65,000 mother received was a loan, mother was obligated to pay back that loan, and this money was not a gift.  Proceeds from a loan are not income for purposes of determining child support.  *See In re Marriage of Morton,* 2016 COA 1, ¶ 18.  The magistrate credited mother's father's testimony and excluded this money from mother's income, finding that it was a valid loan.

¶ 26    Still, father argues that the uncharged interest was a monetary gift that the magistrate should have included in mother's

11

income because mother's parents must report the forgone loan interest on their federal income taxes. However, even accepting the premise of father's argument, he merely establishes that *mother's parents* may report the uncharged interest as a gift when determining their federal taxes. He directs us to no legal authority that required the magistrate to include the uncharged loan interest in *mother's* gross income for purposes of calculating child support. *See Drexler*, ¶ 27; *see also In re Marriage of Cardona*, 321 P.3d 518, 526 (Colo. App. 2010) (recognizing that a determination of income for federal or state income tax purposes does not control a court's determination of gross income for child support purposes), *aff'd on other grounds*, 2014 CO 3.

¶ 27    Second, mother testified that she received a one-time $32,000 gift from her parents over a year before the modification hearing. Non-recurring monetary gifts are included in a parent's gross income during the year the parent received the gift, and if a parent saves that money, their income may also include the interest generated from the money going forward. *See In re A.M.D.*, 78 P.3d 741, 746 (Colo. 2003). While the magistrate found it "likely" that mother could continue to receive gifts from her parents, he

12

determined that any such gifts were offset by the $2,200 per month father earned in rental income, which was in addition to his $12,067 per month wages. The magistrate explained that he had not "heard enough information from either side" about these potential income sources and that because the annual amounts were relatively similar, he declined to include these additional sources of potential income in the child support calculation. In light of the magistrate's finding and the record support, we are not persuaded that the magistrate abused his discretion by excluding the $32,000 cash gift from 2022 when determining mother's gross income.

¶ 28 Third, even if we accept father's claim that mother paid below market value rent to live in her parents' home, father directs us to no relevant legal authority that required the magistrate to include in mother's gross income an amount equal to the difference between the price of her rent and the alleged market value to rent the home as a monetary gift. *See Drexler*, ¶ 27; *see also Cardona*, 321 P.3d at 526. Father also suggests that the reduced rent was a reimbursement or an in-kind payment during mother's employment or operation of a business with her parents, but he directs us to

nothing in the record that would establish that mother was associated with a business operated by mother or her parents.

¶ 29 The district court therefore did not err by declining to disturb the magistrate's finding on mother's gross income.

## VII. Disposition

¶ 30 The order is reversed, and the matter is remanded with instructions to issue an amended child support order obligating father to pay mother $909.78 per month, with such adjustments as are necessary to correct any arrearage.

JUDGE DUNN and JUDGE MEIRINK concur.