25CA0915 Marriage of Noteware 05-28-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0915
Eagle County District Court No. 24DR3
Honorable Russell H. Granger, Judge

---

In re the Marriage of

Christine L. Noteware n/k/a Christine L. Cordaro,

Appellee,

and

Jonathan Ryan Noteware,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE SCHUTZ
Lipinsky and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

---

Daniel Barron, Attorney & Mediation Services, Inc., Leigh A. Rosser, Edwards, Colorado, for Appellee

Brown Carrington, PLLC, Dorothy Walsh Ripka, Kirsten Etre, Denver, Colorado, for Appellant

¶ 1     In this marital dissolution case involving Jonathan Ryan Noteware (husband) and Christine L. Noteware, now known as Christine L. Cordaro (wife), husband appeals the portion of the district court's judgment concerning division of the marital estate, including the court's allocation of property and debt.  We affirm the judgment.

I.     Background and Procedural History

¶ 2     In 2004, wife purchased a home in Eagle using an approximately $76,000[1] down payment that her father gifted to her, and she took sole title to the home.  Husband moved into the home in 2006, before the parties were married, and wife remained the sole owner for the next seven years.  The parties married in 2010 and had two children together.  In 2013, wife executed a quitclaim deed, transferring ownership of the home to herself and husband, jointly.

¶ 3     Husband made significant improvements to the home while he lived there, including building a deck, insulating and drywalling the garage, installing flooring and cabinets, plumbing the basement,

---

[1] At various times, the parties refer to the down payment amount as $78,000; however, because neither party contests the court's finding that the down payment was $76,000, we use that figure.

1

and landscaping the property. During the marriage, both parties deposited their entire paychecks into a joint account, which they used to pay household expenses, including the mortgage. The parties earned comparable salaries. Wife managed the family finances.

¶ 4      In January 2024, wife petitioned to dissolve the marriage. At the temporary orders hearing, wife initially argued that she had a separate property interest in the home valued at around $200,000. However, at the permanent orders hearing, wife conceded she was aware that the home became marital property when she gifted it to the marriage through the quitclaim deed. Nevertheless, wife argued that her initial down payment warranted her receiving a greater share of the home's equity than husband.

¶ 5      The matter was set for a contested permanent orders hearing to address the allocation of the marital debt and the equity in the home. At the hearing, the court found as follows:

> [F]irst, we'll go through some of . . . the law. It sounds like [wife] used separate funds to pay for the down payment — excuse me, and the earnest money. And then the [home] was deeded to [wife and husband] jointly, which under the law creates a presumption of a marital gift. And so it removes that from kind

of a clear-cut decision and puts it into an equitable division.

What I found compelling in the testimony was really just a sentence that [wife] stated, and she said, I think the question — well, between the question and the answer, the testimony, the evidence was that, but [for] that money, which was her separate property, they never would've bought the [home]. And if they never would've bought the [home], they never would've had the appreciation of the past [eighteen] years in the [home].

*The appreciation is clearly marital property divided from the two of them.* And so [husband] has benefited equally during those [eighteen] years of that appreciation and never would've gotten that appreciation but for her contribution to enable her to buy the [home] in the first place. So, the court will find that in an equitable division, that that $76,000 should in equity be transferred to [wife].

Also, part of the court's thought in that although [husband] may not like that, there is a [lost] opportunity cost during the last [eighteen] years of that $76,000, there is a lost interest on that $76,000. *I'm not awarding any interest for that time period. It's just flat dollars in flat dollars out.* So, any interest or opportunity cost is realized through the purchase of the [home] and the appreciation of the [home].

(Emphases added).

¶ 6    The court's written permanent orders required the parties to sell the home, with the proceeds first allocated to pay off the marital debt and then distributed as follows:

- $84,621 to wife, which included $76,000 for her down payment and a $7,921 equalization payment to offset marital property awarded to husband;

- $700 in attorney fees to wife resulting from husband's failure to attend mediation; and

- the balance divided equally between the parties.

## II.    Separate Property Issues

¶ 7    Husband argues that the district court erred by awarding wife $76,000 because the court failed to make the necessary findings to support the award.  We are unpersuaded.

### A.    Standard of Review and Applicable Law

¶ 8    "The classification of property as marital or separate is a legal determination that is dependent on the resolution of factual disputes." *In re Marriage of Cardona*, 321 P.3d 518, 521 (Colo. App. 2010).  We therefore review the court's findings for an abuse of discretion.  *Id.*  A court abuses its discretion when its decision is based on a misapplication of the law or is manifestly unreasonable,

4

arbitrary, or unfair. *In re Marriage of Carey*, 2026 COA 3, ¶ 32. "In assessing whether a [district] court's decision is manifestly unreasonable, arbitrary, or unfair, we ask not whether we would have reached a different result but, rather, whether the [district] court's decision fell within a range of reasonable options." *Id.* (quoting *E-470 Pub. Highway Auth. v. Revenig*, 140 P.3d 227, 230-31 (Colo. App. 2006)).

¶ 9     In a dissolution proceeding, the court must set apart to each spouse their separate property and equitably divide the marital property. § 14-10-113(1), C.R.S. 2025; *Cardona*, 321 P.3d at 521.

¶ 10     Marital property is defined — in pertinent part — as "all property acquired by either spouse subsequent to the marriage except . . . [p]roperty acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent." § 14-10-113(2)(b). Gifts from one spouse to the other are presumed to be marital property. § 14-10-113(7)(a). A party seeking to classify certain marital property as separate must rebut this presumption by clear and convincing evidence. *Id.*

## B. The Court's Treatment of the Home

¶ 11 At the outset, the parties dispute whether the district court treated wife's down payment as separate property or as marital property. Husband contends that the district court erred by awarding wife $76,000 for two reasons: first, wife did not overcome the presumption that she gifted the home to the marriage, *see* § 14-10-113(3), and second, even if she had, the district court erroneously failed to calculate the value of wife's separate interest in the home, *see* § 14-10-113(4).

¶ 12 Wife counters that the district court did not err because she did not assert a separate property interest in the home, and therefore the court was not required to make findings regarding separate property interest. We agree with wife.

¶ 13 As previously noted, at the temporary orders hearing, wife argued that a portion of the home should be treated as her separate property. But at the hearing on final orders, wife conceded that the home was marital property and that she no longer had a separate property interest in it. Nevertheless, wife argued that she should receive a greater portion of the equity derived from the home than

husband, based on the down payment she contributed from her personal funds. The district court agreed with wife's position.

¶ 14 At the permanent orders hearing, the court expressly stated that wife's transfer of the home to herself and husband during the marriage created "a presumption of a marital gift. And so it removes that from kind of a clear-cut decision and puts it into an equitable division."

¶ 15 The court then awarded wife $76,000 from the equity attributed to the home after finding that her down payment, and the resulting benefit to the marital estate, equitably justified the allocation. The court's finding, therefore, was not based on wife's separate property interest in the home, but, rather, on equitable principles.

¶ 16 The court's written order is consistent with these findings. The order states that "[i]t is equitable to allocate $76,000 to wife as credit for the down payment used to purchase the home from the proceeds of the sale as an unequal distribution of those proceeds." We therefore reject husband's assertion that the court treated wife's $76,000 down payment as her separate property.

¶ 17    Relatedly, we perceive no error resulting from the court's decision not to proceed under section 14-10-113(4), which provides as follows:

> Subject to the provisions of subsection (7) of this section, an asset of a spouse acquired prior to the marriage or in accordance with subsection (2)(a) or (2)(b) of this section shall be considered as marital property, for purposes of this article only, to the extent that its present value exceeds its value at the time of the marriage or at the time of acquisition if acquired after the marriage.

¶ 18    Because the court treated the marital home, and all its associated equity, as marital property, it did not need to determine the value of any separate property interest wife may have had in the home.

## III.    Equitable Factors Claim

¶ 19    Husband next contends that the district court abused its discretion by failing to fully consider all the applicable equitable factors in determining the division of marital property, particularly husband's work to improve the home.  Again, we are unpersuaded.

### A.    Standard of Review and Applicable Law

¶ 20    Courts have broad discretion to determine an equitable division of marital assets and debts.  *In re Marriage of Capparelli,*

8

2024 COA 103M, ¶ 7.  Therefore, we review such decisions for an abuse of discretion.  *Id.*

¶ 21     The district court is required to divide marital property in portions that it deems just.  § 14-10-113(1).  Although the division of marital property must be equitable, it need not be equal.  *See In re Marriage of Wright*, 2020 COA 11, ¶ 3.  "[T]he key to an equitable distribution is fairness, not mathematical precision."  *In re Marriage of Cardona*, 2014 CO 3, ¶ 34 (quoting *In re Marriage of Hunt*, 909 P.2d 525, 537 (Colo. 1995)).

¶ 22     To determine what constitutes a just division of marital property, a court must consider the following factors:

> (a) *The contribution of each spouse to the acquisition of the marital property*, . . .;
>
> (b) The value of the property set apart to each spouse;
>
> (c) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse with whom any children reside the majority of the time; and

> (d) Any increases or decreases in the value of the separate property of the spouse during the marriage or *the depletion of the separate property for marital purposes.*

§ 14-10-113(1)(a)-(d) (emphases added).

## B.     Analysis

### 1.     The Property Allocation

¶ 23     Husband contends that the district court failed to consider the parties' relative economic circumstances under section 14-10-113(1)(b) and (c) when it distributed the marital estate, and particularly, its decision to award wife a larger portion of the proceeds of the sale of the home.  He argues that the court placed undue emphasis on wife's $76,000 contribution, failed to consider wife's alleged ability to obtain financial support from her family, and overlooked that, at the time of final orders, wife earned slightly more money than he did.

¶ 24     Husband also takes issue with the court's failure to give adequate weight to his financial contributions to the household, including depositing his entire paycheck into the parties' joint account and his significant home improvements.

¶ 25 Wife counters that the district court's orders have record support, and the court properly considered both parties' economic and noneconomic contributions to the marital estate to arrive at an equitable division. We agree with wife.

¶ 26 In its oral findings, the court acknowledged that both parties contributed to increasing the value of the marital property and noted that, "even if one party may have done more work, one party did less work, one party may have paid more, that all went into the marital estate." As the court noted:

> Both parties — I mean there's been — sounds like there's been some hard times and one party may have worked more, contributed more parts during the marriage. But that's, that's kind of what happens in a marriage is like a partnership. That's kind of what happens in life. So, I still see it as a — that the fairest thing to do is to try and get it as close to 50 percent as I can.

¶ 27 The district court also considered both parties' current and anticipated future economic circumstances. For instance, it applied a significant portion of the home equity to pay off all marital debt, with the stated intention of allowing each party to walk away from the marriage debt-free.

11

¶ 28    Recall that a court is not required to divide marital property equally but must determine what is equitable under the circumstances. *Wright*, ¶ 3. We discern no error in the court's finding that wife should receive a slightly larger share of the marital estate in recognition of the fact that she used her personal funds — the $76,000 — to purchase the home and later gifted it to the marital estate. As a result, both parties benefitted from the substantial equity that had accrued in the home since its purchase. And the court conservatively limited wife's greater share to only the $76,000, without any interest or additional equity attributable to that sum.

¶ 29    We discern no abuse of discretion in the court's decision to equitably adjust the distribution of the home equity in recognition of wife's contribution of her separate property to the "acquisition of the [home]." § 14-10-113(1)(a), (d).

### 2.    The Debt Allocation

¶ 30    Husband also argues that the court inequitably allocated the parties' marital debt because wife "depleted the overall financial resources of the marriage by unilaterally incurring significant debts." As best we understand his contention, husband asserts

that he should not be equally responsible for the credit card debt accumulated by wife during the marriage because she did so without his consent or knowledge.

¶ 31    Wife counters that the district court's findings on the equal division of the marital liabilities comports with evidence that the credit card debt was incurred for expenses benefiting the entire household.

¶ 32    At the permanent orders hearing, wife presented evidence that she incurred the credit card debt to pay family medical expenses, including the children's travel and activities, and the family's home furnishings, appliances, and other expenses.  Husband testified that wife managed the household's finances throughout their marriage.

¶ 33    Husband did not present any evidence to support his contention that some unstated portion of the credit card debt was attributable to wife's use of the credit cards for purely personal purposes.  And on appeal, husband does not challenge any of wife's specific expenditures but, instead, broadly argues that she made credit card charges without his knowledge or consent.

¶ 34 In view of the parties' testimony, and in the absence of any record citation supporting husband's contention that wife's expenditures were for nonmarital purposes, we discern no abuse of discretion in the district court's allocation of the parties' marital debt.

¶ 35 Finally, we reject husband's contention that the court erred by failing to make specific findings regarding whether some of wife's post-filing expenditures were for personal expenses. The court stated at the end of the final orders hearing that it lacked detailed information about the parties' post-filing expenditures and asked counsel whether they could resolve these issues themselves. Counsel assured the court that they could resolve any such disputes, and the court did not further address the issue.

¶ 36 Under these circumstances, we conclude that husband either invited or waived any error attributable to the court's lack of consideration of specific post-filing expenditures. We therefore do not address the issue further. *See Bernache v. Brown*, 2020 COA 106, ¶ 11 ("The doctrine of invited error prevents a party from complaining on appeal of an error that he or she has invited or injected into the case."); *Dep't of Health v. Donahue*, 690 P.2d 243,

247 (Colo. 1984) ("Waiver is the intentional relinquishment of a known right or privilege.").

## IV. Attorney Fees

¶ 37 Wife requests an award of appellate attorney fees, arguing that husband's appellate contentions were frivolous and groundless. Section 13-17-102, C.R.S. 2025, provides that a court shall award attorney fees against any party who has brought or defended a civil action, in whole or in part, that lacked substantial justification. § 13-17-102(2).

¶ 38 As used in the statute, the phrase "'lacked substantial justification' means substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-101.5, C.R.S. 2025. Awards of appellate attorney fees under section 13-17-102 are only appropriate in "clear and unequivocal cases where no rational argument is presented and, thus, the appeal is frivolous." *In re Estate of Shimizu*, 2016 COA 163, ¶ 34.

¶ 39 Although ultimately unsuccessful, husband's appellate contentions were presented in a rational and good faith manner. Therefore, we conclude that his arguments were not substantially

frivolous or groundless.  Accordingly, we deny wife's request for attorney fees.

## V.    Disposition

¶ 40    The judgment is affirmed.

JUDGE LIPINSKY and JUDGE YUN concur.