25CA0010 Nau v Colorado Springs 12-11-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0010
El Paso County District Court No. 24CV30560
Honorable Gregory R. Werner, Judge

---

James J. Nau; Westside Watch, a nonprofit corporation; and Integrity Matters, a nonprofit corporation,

Plaintiffs-Appellants,

v.

City of Colorado Springs, a home rule City and Colorado municipal corporation, acting through the city council of the City of Colorado Springs,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE YUN
Freyre and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 11, 2025

---

Katherine Gayle, Colorado Springs, Colorado, for Plaintiffs-Appellants

Wynetta Massey, City Attorney, Brian Stewart, Senior Attorney, Colorado Springs, Colorado, for Defendant-Appellee

¶ 1     In this C.R.C.P. 106(a)(4) action, the plaintiffs, James J. Nau, Westside Watch, and Integrity Matters, appeal the district court's denial of their claim to set aside the decision of the Colorado Springs City Council (the City Council) approving the rezoning of a parcel of property (the property) and construction of a residential development (the project).  We affirm.

## I.     Background

¶ 2     The property was annexed into the City of Colorado Springs (the City) in 1982 and originally zoned for residential use.  In 2003, the City purchased the property from an investor with the plan of developing it into a sports complex, and to that end, the property was rezoned from residential to public park use.  But the City abandoned the plan in 2016, and, in 2022, it agreed to sell the property back to the original investor.  As part of that transaction, the City sought to rezone the property back to residential use, while the investor sought approval of a land use plan for the project.  In February 2024, after a hearing, the City Council approved both the rezoning and the land use plan.

¶ 3     The plaintiffs — a resident of the City and two nonprofit corporations — sought review of the City Council's decision in

district court under Rule 106(a)(4).  After finding that competent evidence in the record supported the City Council's decision, the district court dismissed the complaint.

¶ 4     The plaintiffs now appeal.[1]

## II.     Analysis

¶ 5     The plaintiffs contend that the district court erred by denying their motions to amend their opening brief and to supplement the record.  They further contend that the City Council abused its discretion by reaching a decision that was not supported by competent evidence, failing to consider the effect of the project on the Preble's meadow jumping mouse, and engaging in "illegal spot zoning."

### A.     Denial of Plaintiffs' Motion to Amend Opening Brief

¶ 6     The plaintiffs contend that the district court erred by denying their motion to amend the opening brief for their Rule 106(a)(4) motion.  We disagree.

---

[1] The plaintiffs' opening brief includes a request for oral argument. However, under C.A.R. 34(a), "[a] request for oral argument must be made in a separate document entitled 'request for oral argument.'" Because the plaintiffs' request does not comply with the appellate rules, we deny it.

¶ 7    A district court has discretion over how to manage its docket and move cases forward. *Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 592 (Colo. App. 2007). A district court abuses its discretion "when its decision is manifestly arbitrary, unreasonable, unfair, or based on a misapplication of the law." *Black v. Black*, 2020 COA 64M, ¶ 118.

¶ 8    The plaintiffs submitted their opening brief on August 21, 2024, and the district court gave the City Council twenty-one days to respond. Fourteen days later, the plaintiffs moved to amend their opening brief "for clarity and readability." Their motion stated that the changes were "stylistic and editorial" and that they were "not raising any new matters of law or facts." The district court denied the amendment, reasoning that it would not prejudice the plaintiffs, since they did not seek to address new facts or matters of law. On the other hand, the court reasoned, granting the amendment would prejudice the City Council, which "may have been working on [its] response," by requiring it to respond to a new brief.

¶ 9     We discern no abuse of discretion.  Rather, the district court appropriately considered the potential prejudice to each party and reached a reasoned decision.

¶ 10    We are not persuaded otherwise by the plaintiffs' argument that the denial of the amendment violated C.R.C.P. 15, which provides that "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is filed."  An opening brief is not a pleading.  *See* C.R.C.P. 7 (The pleadings are "a complaint and answer; a reply to a counterclaim . . . ; an answer to a cross-claim . . . ; a third-party complaint . . . ; a third-party answer . . . ; and . . . a reply to an affirmative defense.  No other pleading shall be allowed, except upon order of court.").

B.      Denial of Plaintiffs' Motion to Supplement Record

¶ 11    The plaintiffs contend that the district court erred by denying their motion to supplement the record with materials related to (1) "the [International Fire Code] amendment process" and (2) a previous City Council hearing regarding a different proposed housing development (Kettle Creek).  We disagree.

¶ 12    We review the district court's ruling on a motion to supplement the record for an abuse of discretion. *Foothills Park & Recreation Dist. v. Bd. of Cnty. Comm'rs*, 2024 COA 62, ¶ 22.

¶ 13    Rule 106(a)(4) review "shall be . . . based on the evidence in the record before the defendant body or officer."  C.R.C.P. 106(a)(4)(I); *see Whitelaw v. Denv. City Council*, 2017 COA 47, ¶ 10 n.3 ("[O]ur review is based solely on the record that was before the City Council.").  Because the materials related to the International Fire Code amendment process and the Kettle Creek hearing were not presented to the City Council as part of this case, the district court did not abuse its discretion by denying the plaintiffs' motion to supplement the record.

### C.    Competent Evidence to Support Decision

¶ 14    The plaintiffs contend that the City Council's decision was not supported by competent evidence.  Specifically, they argue that there was no evidence that the project's residents could safely evacuate in the event of a wildfire.  We are not persuaded.

#### 1.    Standard of Review

¶ 15    "Because an appellate court sits in the same position as the district court when reviewing an agency's decision under C.R.C.P.

106(a)(4), appellate review of the district court's decision is de novo." *Whitelaw*, ¶ 8. Like the district court, we "must uphold the decision of the governmental body unless there is no competent evidence in the record to support it." *Yakutat Land Corp. v. Langer*, 2020 CO 30, ¶ 20 (citation omitted). "No competent evidence" means that "the ultimate decision of the administrative body is so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority." *Id.* at ¶ 21 (citation omitted).

¶ 16    In reviewing a zoning decision, we may not reweigh the evidence or substitute our judgment for that of the zoning authority. *Stor-N-Lock Partners #15, LLC v. City of Thornton*, 2018 COA 65, ¶ 33. Rather, "we must accept the relative weight given to conflicting evidence by the governmental entity." *Id.*

### 2.    Discussion

¶ 17    Under section 7.5.704.D of the City's municipal code, an application for rezoning is subject to certain approval criteria, including that "[t]he rezoning will not be detrimental to the public interest, health, safety, convenience, or general welfare." Colo. Springs City Code § 7.5.704.D.2. The plaintiffs argue that there

6

was no competent evidence in the record to support a finding that the project would not be detrimental to public health and safety. Specifically, they argue that the City Council overlooked "overwhelming, uncontradicted expert consensus" that the project could not be safely evacuated in the event of a wildfire.

¶ 18    However, the plaintiffs do not cite any expert testimony in the record offering an opinion that the residents of the project could not safely evacuate. *See O'Quinn v. Baca*, 250 P.3d 629, 632 (Colo. App. 2010) (parties should not expect the court to peruse the record without the help of pinpoint citations). To the contrary, the City's fire marshal testified that the risk of a major wildfire in the area was "very minimal." He further testified that developing the property into homes with irrigated yards, deciduous trees, and paved driveways and streets would reduce the threat of a wildfire. Finally, he testified that, because of the area's low fuel load, he believed residents of the project would be able to evacuate safely, explaining as follows:

> In this part of the City, which is why I say I
> don't have any significant concerns — I didn't
> say we won't have fires. What I'm saying is I
> don't see a gross life risk to any of the potential
> grass fires we could have up in that area,

> regardless of people, if they're stayed [sic] and they're queued in their cars waiting to get out. I think they're going to be fine.
>
> That's not a guarantee. I am not promising anything, but I don't see a reasonable risk that we should be that concerned about for even a little bit of a delay to get out of there. That is my professional opinion.

¶ 19    In addition, the investor presented evidence that the project would be surrounded by an open space buffer, further mitigating wildfire concerns, and that the project's egress road was wide enough to accommodate four lanes of vehicles exiting simultaneously in the event of an evacuation.

¶ 20    The record shows that the City Council members carefully considered fire safety concerns and found the evidence addressing those concerns to be persuasive. One councilmember remarked that "[t]here is no forest here. That's the thing, we don't have a large fire load. . . . [I]t'll actually be more protective with the development than it would, leaving it the way it is." Another noted that "this is not a WUI [wildland urban interface] situation. This is not a place where we've got large-scale fuel for . . . a major fire event. And . . . our expert, in the form of our Fire Marshal, has given us his expert opinion." And two councilmembers noted that

the significant amount of existing residential and commercial development in the area indicated that much of the fuel load had already been removed.

¶ 21     Accordingly, because there was evidence in the record to support the City Council's finding that the project would not be detrimental to public health and safety, we must uphold its decision.  *See Yakutat,* ¶ 20.

¶ 22     We are not swayed by the plaintiffs' arguments that (1) the fire marshal's testimony before the City Council contradicted his earlier testimony before the City's Planning Commission; (2) the City Council misinterpreted the International Fire Code; or (3) the City Council president acknowledged that the project would be detrimental to public health and safety.

¶ 23     First, although the plaintiffs argue that the fire marshal "[r]everse[d] his position at the Planning [Commission] and impeach[ed] himself," they do not cite any testimony by the fire marshal before the Planning Commission.

¶ 24     Second, the plaintiffs do not cite or interpret any provisions of the International Fire Code.  We thus cannot address their argument that the "City relied on [a] misinterpretation and

9

misapplication of the [International Fire Code]." *See In re Marriage of Vittetoe,* 2016 COA 71, ¶ 39 (we do not consider arguments presented in a perfunctory and undeveloped manner).

¶ 25    Third, the plaintiffs argue that "the City knowingly approved a development that failed to meet safety standards" because, after hearing evidence submitted in opposition to the project, the City Council president remarked:

> [W]e make this decision based upon the criteria. And there's a list of criteria. And . . . what I have heard this evening tells me that the criteria has been fulfilled, with maybe the exception of the one about a detriment to the safety, health, and convenience of the community.
>
> And for most things that we have to vote on, it typically boils down to that. So we have to make . . . a decision about whether we support the [investor] and this project or we don't.

¶ 26    Notably, the president made this statement before hearing the fire marshal's testimony. Further, the president made it clear that the health and safety of the community was his "number one" concern, a position echoed by other councilmembers. As quasi-judicial decision-makers, the councilmembers are entitled to the presumption that they made those statements with honesty and

integrity. *Whitelaw*, ¶ 11. The president's acknowledgment of testimony from opponents of the project does not demonstrate an abuse of discretion by the City Council. *See id.* at ¶ 60 (no abuse of discretion by the City Council where "[t]he lengthy deliberations show[ed] that Council members discussed the criteria and evidence in the record, including testimony presented by both opponents and proponents at the hearing").

### D. Preble's Meadow Jumping Mouse

The plaintiffs contend that the City Council violated the federal Endangered Species Act, 16 U.S.C. §§ 1531-1544, by "fail[ing] to consider environmental impacts to the Preble's meadow jumping mouse." But they do not cite to any portion of the record where this issue was raised with the City Council. Nor do they cite or interpret any provision of the Endangered Species Act.

When reviewing an agency's decision under C.R.C.P. 106(a)(4), we may address only "issues that were properly presented for determination by the administrative agency." *Abromeit v. Denv. Career Serv. Bd.*, 140 P.3d 44, 53 (Colo. App. 2005). Arguments not raised in administrative proceedings are not preserved for appellate

review. *Id.* Accordingly, like the district court, we do not address this issue.

## E.    Spot Zoning

¶ 29    The plaintiffs contend for the first time on appeal that the City Council abused its discretion because its "rezoning decision constitutes illegal spot zoning." "Spot zoning examines 'whether the change in question was made with the purpose of furthering a comprehensive zoning plan or [was] designed merely to relieve a particular property from the restrictions of the zoning regulations.'" *Whitelaw,* ¶ 63 (quoting *Clark v. City of Boulder*, 362 P.2d 160, 162 (Colo. 1961)). Because arguments not raised in administrative proceedings are not preserved for appellate review, *Abromeit*, 140 P.3d at 53, we do not address the plaintiffs' spot zoning contention.

## F.    Attorney Fees

¶ 30    The plaintiffs request appellate attorney fees in a single sentence of their opening brief: "[The plaintiffs] respectfully request that this Court . . . award costs and attorney fees as permitted by law." But C.A.R. 39.1 provides that "the party claiming attorney fees must include a specific request" and "explain the legal and

factual basis" for an award of fees.  The plaintiffs do not provide any factual recitation or legal authority for their request.  Accordingly, we will not consider it.

### III.   Disposition

¶ 31     The judgment is affirmed.

JUDGE FREYRE and JUDGE PAWAR concur.